UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

216 EAST 29TH STREET TRUST,

                Plaintiff,

        v.

CITY OF NEW YORK and NEW YORK CITY
COMMISSION ON HUMAN RIGHTS,

                Defendant.

**VERIFIED COMPLAINT**

Case No.

216 East 29th Street Trust (the "Plaintiff" or "Trust"), by and through its counsel, Bond, Schoeneck & King, PLLC, as and for its complaint against the City of New York (the "City" or "NYC") and New York City Commission on Human Rights (the "Commission") under 42 U.S.C. § 1983, states as follows:

## **PARTIES**

1.     216 East 29th Street Trust is a trust managed by its trustee, Marcus Sakow, a resident of the State of New York, and owns a residential apartment building located at 216 East 29th Street, New York, NY 10016.

2.     The City of New York is a municipal corporation with an address at City Hall Park, New York, NY 10007.

3.     The Commission is an administrative agency of the City of New York with an address at 22 Reade Street, New York, NY 10007.

## **JURISDICTION AND VENUE**

4.     The nature of the matter involves the constitutionality of a New York City statute, NYC Admin. Code § 8-107, challenged under 42 U.S.C. § 1983, giving rise to federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1988(a).

17161796.1

5.      Because both the plaintiff and defendant reside in the Southern District of New York and because a substantial part of the events giving rise to the claims herein occurred in this district, venue is proper in the Southern District of New York pursuant to 28 U.S.C. 1391(b).

**FACTS**

6.      New York City Administrative Code § 8-107 states in relevant part that:

It shall be unlawful discriminatory practice for the owner . . . or managing agent . . . of a housing accommodation . . . or any agent or employee thereof:
(1) . . . because of any lawful source of income of such person or persons . . .
(a) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny or withhold from any such person or group of persons such a housing accommodation . . .
(b) To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation . . .; or
(c) To represent to such person or persons that any housing accommodation or an interest therein is not available for inspection, sale, rental or lease when in fact it is available to such person.

NYC Admin. Code § 8-107.

7.      New York City Administrative Code § 8-102 defines "lawful source of income" to mean, inter alia "any form of federal, state, or local public assistance or housing assistance including, but not limited to, *section 8 vouchers*, whether or nor such income or credit is paid or attributed directly to a landlord."  (emphasis added).

8.      The practical effect of the NYC Admin. Code is to compel landlords to participate in the federal Housing Choice Voucher Program and Emergency Housing Voucher Program, both of which are commonly referred to as "Section 8."

2

17161796.1

9.      With some exceptions not relevant to this matter, the Emergency Housing Voucher Program is governed by the same regulations as the Housing Choice Voucher Program under Section 8(o) of the United States Housing Act of 1937.

10.     The Housing Choice Voucher Program was enacted in 1974 through an amendment to the U.S. Housing Act of 1937.  42 U.S.C. § 1437f.

11.     Congress created the Emergency Housing Voucher Program in 2021 through passage of the American Rescue Plan Act of 2021.

12.     Both programs (together "Section 8") are governed by a complex set of federal regulations that determine landlord and tenant eligibility, limit the types of properties that can participate in the program, govern the role of the landlord, tenant and local Public Housing Authority ("PHA"), require the landlord to enter into a separate contract with the PHA in connection with each unit leased, set limits on the rent that landlords can charge, provide for governmental inspection of properties and financial records and more.  24 C.F.R. Part 982.

13.     "In the HUD Housing Choice Voucher (HCV) program HUD pays rental subsidies to eligible families can afford decent, safe, and sanitary housing."  24 C.F.R. § 982.1(a)(1).

14.     "Families select and rent units that meet program housing quality standards."  24 C.F.R. § 982.1(a)(2).

15.     The PHA enters into a separate contract, the Housing Assistance Payment ("HAP") contract, with the landlord to make payments on the family's behalf.  24 C.F.R. § 982.1(a)(2).

17161796.1

16.     The PHA will only permit a landlord and tenant to participate in Section 8 with respect to a specific apartment if it determines the rent being charged is reasonable. 24 C.F.R. §§ 982.1(a)(2), 982.353(e) and 982.507(a)(1).

17.     Reasonable rent "is not more than rent charged: (1) For comparable units in the private unassisted market and (2) For comparable unassisted units in the premises." 24 C.F.R. § 982.2(b).

18.     Reasonable rent must be determined initially, before any increase in rent by the landlord, any time HUD directs and any other time of the PHA's choosing. 24 C.F.R. 982.507(a).

19.     The first component of reasonable rent requires the PHA to determine how much the market would charge for a particular unit, and if Section 8 were mandatory, would require landlords not to charge more than that rate.

20.     The second component of reasonable rent requires the PHA to access the landlord's financial records to determine the prices being charged for comparable units at the same premises.  24 C.F.R. §§ 982.507(b) and (d).

21.     Every time the landlord accepts a monthly housing assistance payment it must certify that the rent is comparable to the rent for unassisted units in the premises. 24 C.F.R. § 982.507(d).

22.     The PHA must then maintain copies of landlords' records and make them available for audit.  24 C.F.R. § 982.158(f)(7).

23.     Not every housing unit is eligible for participation in Section 8.

24.     Eligibility is based on meeting Housing Quality Standards ("HQS") and price requirements.

17161796.1

25.    Even units that are determined to be priced fairly may not be eligible for Section 8 if they are too expensive.

26.    A family cannot receive rental assistance where the gross rent exceeds 40% of a family's monthly adjusted income.  24 C.F.R. § 982.305(a)(5).

27.    Federal law requires that an assistance contract must establish the "maximum monthly rent (including utilities and all maintenance and management charges) . . . ." 42 USC 1437f(c)(1)(A).

28.    Before a PHA can approve a tenant and landlord for participation in Section 8, the PHA must inspect the unit to confirm that it satisfies Housing Quality Standards. 24 C.F.R. § 982.305(b).

29.    Housing Quality Standards are many and include certain key aspects such as "(A) Sanitary facilities; (B) Food preparation and refuse disposal; (C) Space and security; (D) Thermal environment; (E) Illumination and electricity; (F) Structure and materials; (G) Interior air quality; (H) Water supply; (I) Lead-based paint; (J) Access; (K) Site and neighborhood; (L) Sanitary condition; and (M) Smoke detectors. 24 C.F.R. § 982.401(a)(2)(ii).

30.    The sanitary facility requirement means each eligible unit must have an in-unit bathroom.  24 C.F.R. § 982.401(b).

31.    Units must also have their own kitchens including an oven, stove/range and refrigerator of appropriate size for a family, kitchen sink, countertop space and garbage cans. 24 C.F.R. § 982.401(c).

32.    Units must have a living room, kitchen area and bathroom in addition to at least one bedroom for each two persons.  24 C.F.R. § 982.401(d)(2)(i) and (ii).

5

33.    They must also have windows that access the outdoors on either a ground floor or with a fire escape.  24 C.F.R. § 982.401(d)(2)(iii).

34.    Certain types of housing are not eligible for Section 8, including public housing, project housing, nursing homes, college dormitories and owner-occupied units. 24 C.F.R. § 982.352(a).

35.    The applicant cannot be receiving some other form of housing subsidy, including any local or State rent subsidy.  24 C.F.R. § 982.352(c).

36.    The PHA must inspect each unit for compliance with HQS, looking for adequate heating, locks, lighting and electricity, structural soundness, working elevators, air ventilation, water supply, lead-based paint compliance, neighborhood quality, absence of rodents and insects and the presence of smoke detectors.  24 C.F.R. §§ 982.401 and 982.405.

37.    There is both an initial and periodic inspection.  24 C.F.R. at § 982.405(a).

38.    Landlords are required to permit government inspectors, or their agents, into buildings for these inspections, and the inspection is not limited to the unit being negotiated, but covers the building and premises the unit is in.  A true and correct copy of a Form HAP Contract is attached hereto as **Exhibit A** ("Form HAP Contract").

39.    Landlords and PHAs are required to use the HUD approved contracts, including the HAP contract between the PHA and property owner and a "tenancy addendum required by HUD (which is included in both the HAP contract and in the lease between the owner and the tenant)."  24 C.F.R. § 982.162.

40.    The HAP contract tracks the regulations and specifically provides that the landlord agrees that "[t]he PHA may inspect the contract unit and premises at such times

6

17161796.1

as the PHA determines necessary, to ensure that the unit is in accordance with the HQS." (Form HAP Contract at Part B, ¶ 3(e).)

41.    The HAP contract further mandates the landlord to consent to government review of books and records to determine reasonable rent, specifically stating that "[t]he owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere."  (Form HAP Contract at Part B, ¶ 6(d).)

42.    The HAP contract goes on to require the landlord's consent to entry and access to records by the PHA, HUD and the Comptroller General of the United States. (Form HAP Contract at Part B, ¶ 11.)

43.    The scope of that access is extremely broad, and the HAP contract language states:

> **11. PHA and HUD Access to Premises and Owner's Records**
> a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.
> b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.
> c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

44.    Of particular note is the access that must be granted to the government to "any computers, equipment or facilities containing . . . records."  (Form HAP Contract at Part B, ¶ 11.)

7

45.    This provision does not prohibit the government from accessing other records on those computers or at those facilities, and the government can be expected to search the entirety of computers and facilities to confirm that it has reviewed all pertinent records.

46.    Because owners who commit fraud, bribery or any other criminal act are in breach of the HAP contract (Form HAP Contract at Part B, ¶ 10(a)(3)), inspection of computers and devices would almost certainly be used to look for evidence of those crimes.

47.    Owners cannot increase rents demanded of Section 8 tenants once their tenancy begins without obtaining the approval of the PHA.  42 U.S.C. § 1437f(o)(10)(B).

48.    If an owner seeks to increase rent to keep up with inflation or market trends, but the PHA does not approve of the increase, the PHA can deny payment to the owner, leaving the owner to deal with the tenant and a potential eviction.   42 U.S.C. § 1437f(o)(10)(B).

49.    Owners must give up certain eviction rights and must enforce certain eviction rules with which they may not agree.

50.    Landlords may only terminate leases with Section 8 tenants if they commit a serious violation of the terms and conditions of the lease (including the failure to pay rent), violate federal, State or local laws and for other good cause.   24 C.F.R. § 982.310(a).

51.    However, landlords may not terminate a tenancy if the PHA fails to pay rent. 24 C.F.R. § 982.310(b).

17161796.1

52.    Tenants, or their guests, who engage in drug related crimes on or near the premises and tenants whose household members illegally use drugs that interfere with the health, safety and right to peaceful enjoyment of the premises by other tenants are subject to lease termination.  24 C.F.R. § 982.310(c)(1).

53.    Likewise, the owner is expected to evict tenants who engage in other criminal activity that threatens other tenants even if that criminal activity is not taking place on-site, regardless of whether that person has been arrested or convicted of a crime.  24 C.F.R. § 982.310(c)(2).

54.    The City cannot make acceptance of Section 8 mandatory for all property owners.

55.    For example, certain types of landlords are barred from participation in Section 8, including present and former members or officers of a PHA, employees of a PHA or any contractor or subcontractor of a PHA responsible for policy formation or decision making, public officials, members of State and local legislatures who exercise functions or responsibilities with respect to the programs and members of Congress.  24 C.F.R. § 982.161(a).

56.    Owners can also find themselves debarred, suspended or subject to a limited denial of participation.  24 C.F.R.§ 982.306(a).

57.    Owners facing an administrative or judicial action for violation of the Fair Housing Act or other federal equal opportunity requirement (regardless of merit or stage of action) and owners found to have violated the FHA and other equal opportunity requirements are not eligible to receive Section 8 tenants.  24 C.F.R.§ 982.306(b).

9

17161796.1

58.     Owners that (1) violate a HAP contract, (2) commit fraud, bribery or another corrupt act in connection with a federal housing program, (3) engage in drug-related crimes, (4) have a history or practice of non-compliance with housing quality standards for units already leased under Section 8, (5) fail to evict tenants who violate terms of peaceful enjoyment including tenant-made or guest-made threats to the owner, PHA employees or other tenants or engage in drug-related activities, (6) have a history of violating state and local housing codes and (7) that do not pay real estate taxes, are all ineligible for participation in Section 8.  24 C.F.R. § 982.306(c).

59.     The federal government has made clear that the City, in passing a non-discrimination law, cannot "change or affect any requirement of this part, or any other HUD requirements for administration or operation of the program."  24 C.F.R. § 982.53(d).

60.     Even if the amendment to the Human Rights Law purportedly requiring landlords to accept Section 8 vouchers were enforceable generally, it could not be enforced with respect to numerous types of property owners because NYC law would directly conflict with federal law.

61.     Courts in New York State, including the Court of Appeals, have held that conditioning a landlord's participation in the rental market on the waiver of constitutional rights is itself unconstitutional.  *Sokolov v. Village of Freeport*, 52 N.Y.2d 341 (1981) ("It is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution.").

62.     The New York State Supreme Court recently found that an analogous provision of the New York Executive Law, purporting to outlaw source of income

10

discrimination in housing and including Section 8 vouchers as a source of income, was unconstitutional.  *See People of the State of New York v. Commons West, LLC*, 80 Misc.3d 447 (Sup. Ct. Tompkins Cnty. June 27, 2023) (holding that NY Exec. Law 296(5)(a)(1) violates the Fourth Amendment).

63.     On or around July 19, 2023, a prospective tenant named Dmitri Derodel ("Derodel") contacted the Trust's property manager, Homefront Management, to inquire about renting an apartment from the Trust.

64.     On July 26, 2023 Derodel informed the Homefront Management that Derodel had Section 8 voucher and wished to use it to pay in part for the apartment.

65.     Homefront Management initially told Derodel that its client did not participate in the voluntary Section 8 program.

66.     Upon information and belief, Derodel contacted the Commission to seek its assistance in convincing Homefront Management to participate in Section 8 and to accept Derodel's Section 8 voucher.

67.     Facing pressure from the Commission, Homefront Management agreed to proceed with Derodel's rental application and executed required documents issued by New York City Housing Authority ("NYCHA"), the local PHA.

68.     Homefront Management learned that its signature on NYCHA as the property manager was insufficient.

69.     The Commission then asked the Trust to execute NYCHA's documentation.

70.     The Trust decided not to participate in the voluntary Section 8 program, and declined to execute the NYCHA documents.

11

71.    The Trust has never had a Section 8 tenant and has thus never executed a HAP contract.

72.    The New York City Commission on Human Rights threatened commencement of an enforcement action if the Trust did not execute the requisite NYCHA documentation to accept Derodel as a tenant under the Section 8 program.  A true and correct copy of correspondence from Stephanie Rivera, Esq., Supervising Attorney for the Law Enforcement Bureau of the New York City Commission on Human Rights, is attached hereto as **Exhibit B**.

<u>**AS AND FOR ITS FIRST CAUSE OF ACTION**</u>
(Declaratory Judgment)

73.    The Trust repeats and reasserts each and every allegation in Paragraphs 1 through 72 as if set forth fully herein.

74.    New York City statute, NYC Admin. Code § 8-107 is unconstitutional because it compels landlords to participate in Section 8 and execute a HAP Contract that would waive Constitutional rights under the Fourth Amendment.

75.    The Trust is entitled to declaratory judgment finding NYC Admin. Code § 8-107, when read in conjunction with NYC Admin. Code § 8-102, defining lawful source of income to include Section 8 vouchers, as unconstitutional.

<u>**AS AND FOR ITS SECOND CAUSE OF ACTION**</u>
(Declaratory Judgment)

76.    The Trust repeats and reasserts each and every allegation in Paragraphs 1 through 75 as if set forth fully herein.

77.    New York City statute, NYC Admin. Code § 8-107 is preempted because it conflicts with federal statutes and regulations (42 U.S.C. § 1437f and 28 C.F.R. Part 928)

12

17161796.1

which state that landlord participation in Section 8 is voluntary and restrict the types of landlords eligible to participate in the Housing Choice Voucher Program. *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1988) (holding that Congress intended Section 8 to be voluntary).

78.    An actual conflict exists between provisions of 42 U.S.C. § 1437f preventing various categories of landlords from participating in the Housing Choice Voucher Program and NYC Admin. Code § 8-107 which seeks to compel all persons owning rental buildings, with the exception of certain owner-occupied buildings, to participate in Section 8.

79.    A conflict further exists because Congress has declared participation in Section 8 to be voluntary, and NYC is attempting to make it mandatory.

80.    The Supremacy Clause of the United States Constitution provides that where actual conflicts arise between local and federal law, federal law preempts local law. *See Murphy v. Nat'l. Collegiate Athletic Ass'n*, 584 U.S. 453, 470-71 (2018).

81.    As a result, the Trust is entitled to declaratory judgment declaring NYC Admin. Code § 8-107, when read in conjunction with NYC Admin. Code § 8-102, to compel participation in the Housing Choice Voucher Program, preempted by federal law.

## AS AND FOR ITS THIRD CAUSE OF ACTION
(Declaratory Judgment)

82.    The Trust repeats and reasserts each and every allegation in Paragraphs 1 through 81 as if set forth fully herein.

83.    New York City statute, NYC Admin. Code § 8-107 operates as a taking in violation of the Fifth and Fourteenth Amendments because it compels property owners to lease their apartments at rates that are subject to government approval, depriving them of the commercial value of their property.

13

17161796.1

84.     Section 8 gives the PHA authority over the reasonableness of rent charged by landlords, barring landlords who seek to charge above market rent from participating in the Section 8 program.  42 U.S.C. § 1437f(o)(10)(A) and (B).

85.     Landlords with Section 8 tenants may not be able to increase rent after the expiration of an initial rental term because the PHA can withhold all housing assistance payments if rent is increased too much or at all.  42 U.S.C. § 1437f(o)(10)(A) and (B).

86.     This leaves landlords with tenants unable to afford rent who the landlord may not be able to evict based on the fact that housing assistance payments were withheld.  24 C.F.R. § 982.310(b)(2).

87.     By asserting authority over the rates set by landlords, and holding them liable for discrimination where those rates are found too high in violation of NYC Admin. Code § 8-107 based on a contention that the landlord is discriminating with respect to the "terms, conditions or privileges of the sale, rental or lease of any such housing accommodation," the NYC statute serves to deprive landlords of their "reasonable investment-backed expectations."

88.     The Trust is entitled to declaratory judgment declaring NYC Admin. Code § 8-107 unconstitutional as a physical and/or administrative taking.

### AS AND FOR ITS FOURTH CAUSE OF ACTION
(Permanent Injunction)

89.     The Trust repeats and reasserts each and every allegation in Paragraphs 1 through 88 as if set forth fully herein.

90.     NYC Admin. Code § 8-107, when read in conjunction with NYC Admin. Code § 8-102, defining lawful source of income to include a Section 8 voucher, is unconstitutional for numerous reasons.

14

17161796.1

91.    The NYC Commission on Human Rights has threatened to file an administrative complaint against the Trust for failing to participate in Section 8.

92.    The Trust is likely to succeed on the merits of this action and obtain declaratory judgment that NYC Admin. Code § 8-107, when read in conjunction with NYC Admin. Code § 8-102, is unconstitutional.

93.    The declaratory judgment causes of action asserted herein would be raised as defenses to a complaint by the Commission.

94.    Requiring the parties to litigate these issues in two separate forums would be a waste of resources and could lead to inconsistent rulings.

95.    The Commission should be enjoined from pursuing a complaint against the Trust under an unconstitutional law.

96.    The Trust is entitled to an injunction barring the Commission from prosecuting a complaint against it.

## AS AND FOR ITS FIFTH CAUSE OF ACTION
(Attorneys' Fees and Costs)

97.    The Trust repeats and reasserts each and every allegation in Paragraphs 1 through 96 as if set forth fully herein.

98.    Parties successful in enforcing their rights under 42 U.S.C. § 1983 are entitled to recover their attorneys' fees pursuant to 42 U.S.C. § 1988(b).

99.    The Trust will be entitled to its reasonable attorneys' fees upon conclusion of this action.

WHEREFORE, the Court should grant the Trust judgment as follows:

(a) declaring NYC Admin. Code § 8-107, when read in conjunction with NYC

  Admin. Code § 8-102, unconstitutional;

15

17161796.1

(b) permanently enjoining the Commission from prosecuting a complaint against

the Trust;

(c) awarding attorneys' fees and costs to the Trust; and

(d) granting the Trust such other and further relief as the Court deems just and

proper.

Dated:  January 26, 2024                             BOND, SCHOENECK & KING, PLLC


By:_____/s/ Curtis A. Johnson_____
        Curtis A. Johnson
*Attorneys for 216 East 29th Street Trust*
350 Linden Oaks, Third Floor
Rochester, New York  14625-2825
Telephone:  (585) 362-4700
cjohnson@bsk.com

16

17161796.1

## VERIFICATION

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF NEW YORK           )


         Marcus Sakow, being duly sworn, deposes and says that deponent is the Trustee of the 216 East 29th Street Trust, the trust named in the within action, that deponent has read the foregoing Verified Complaint and knows the contents thereof, that the same is true to deponent's own knowledge, except as to such matters therein stated to be alleged on information and belief, and as to those matters deponent believes it to be true.

 

_____
Marcus Sakow

Sworn to before me this
26th day of January, 2024.

_____
Notary Public

JIAYI CAO
Notary Public - State of New York
NO. 01CA0015201
Qualified in New York County
My Commission Expires Oct 28, 2027

17161796.1

JIAYI CAO
Notary Public - State of New York
NO. 01CA0015201
Qualified in New York County
My Commission Expires Oct 28, 2027