O2Ds216c

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

216 EAST 29TH STREET TRUST,

              Plaintiff,

          v.                          24 Civ. 595 (ER)

CITY OF NEW YORK, et al.,

              Defendants.

------------------------------x
                                      New York, N.Y.
                                      February 13, 2024
                                      3:30 p.m.

Before:

                    HON. EDGARDO RAMOS,

                                      District Judge

                         APPEARANCES

BOND, SCHOENECK & KING PLLC
     Attorneys for Plaintiff
BY:  CURTIS A. JOHNSON

NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants
BY:  DANIEL MATZA-BROWN

O2Ds216c

(The Court and all parties appearing telephonically)

THE DEPUTY CLERK:  Counsel, please state your name for the record, starting with counsel for plaintiff.

MR. JOHNSON:  Good afternoon, your Honor.

Curtis Johnson, Bond, Schoeneck & King for plaintiff, 216 29th Street Trust.

THE DEPUTY CLERK:  Counsel for defendant.

MR. MATZA-BROWN:  Good afternoon, your Honor.

For the defendants, Assistant Corporation Counsel Daniel Matza-Brown from the Law Department.

THE COURT:  Good afternoon to you all.

This matter is on for a hearing on a preliminary injunction.  I note for the record that it is being conducted by telephone.

Mr. Curtis Johnson, I will hear you.

MR. JOHNSON:  Thank you, your Honor.

This is a matter of, essentially, a counsel of Younger abstention and the issue of irreparable harm, if the court were to essentially not hear this case to Younger abstention.  So the two are very much intertwined.

Our claims include a claim that the City's statute requiring or prohibiting discrimination in housing based on lawful source of income, to the extent it includes Section 8 housing, is unconstitutional on its face.  And our claim is against the City, which really wouldn't be entitled to Younger

O2Ds216c

abstention because the City is not the prosecuting party in an administrative proceeding and the administrator, which is commissioner on human rights, which would be the prosecuting party.

Ultimately because we seek release against the City and because the City and the commission really have unified interest in deciding this matter, we ask the court not to apply Younger abstention because, A, the City is not a party, and B, we don't think it applies. We don't think there is a pending proceeding.

And as a matter of ensuring that there is no later assertion of Younger abstention, we ask the court to enjoin the Commission on Human Rights from commencing a proceeding to try to evince the court of its jurisdiction. The reasons that we're facing potential irreparable harm are, first, that the City's recovery is more than just financial, were it to ultimately determine that my client violated what we think is an unconstitutional statute. The City has the power to essentially compel my client to waive its Fourth Amendment rights through court order, or at least through administrative order, and my client would be left in the unenviable position to disregard their order while seeking Article 78 review. And hoping that, you know, the Article 78 court would grant a stay, there is no guarantee of that.

Further, you know, it would be prejudicial to my

O2Ds216c

client and irreparably prejudicial if it had to litigate in state court.  It couldn't pursue its facial claim against the City and the Commission because the case is really claims against both staying together, and because it couldn't obtain attorneys' fees under 42 U.S.C. 1988.  So ultimately we think there is significant irreparable harm were the court to be divested.

Beyond that, one of our claims has to do with preemption, and the Second Circuit is very clear in the *Salute* case that Section 8 is a voluntary program and that any interpretation other than that by, you know, state law would be preempted.  Now, that case certainly is binding on this court because it is a Second Circuit decision.  It was not necessarily persuasive, but not binding necessarily on a state court or administrative proceeding in state court.

And what is binding there is contrary to decisions, some contrary decisions, some consistent decisions from appellate decisions in the state which, again, aren't binding on this court.

We feel it is important to be able to litigate this matter in federal court to our chosen venue to take advantage of what the Second Circuit has to say about the matter.

THE COURT:  Well, let me just ask a couple of questions, Mr. Johnson, on what you've said so far.

First of all, I'm trying to understand the distinction

O2Ds216c

that you're making between the City and the Human Rights Commission.

What significance is there that you're trying to say?

MR. JOHNSON:  So it's a City statute.  The reason that we brought this complaint against the City itself is that, you know, the City through its legislative capacity created this statute and we would like to it to be declared unconstitutional on a facial basis.  The Commission on Human Rights is an administrative body so it's part of the City, but it's separate, has separate obligations, including enforcing the City's laws.

You know, the City is not just the mayor, it's city counsel.  It's all of the different parts of the government of the City, including the legislative actions of creating what we think is an unconstitutional statute.  The Commission on Human Rights is, I guess, a subset of the executive authority of the City.

THE COURT:  And then you also indicated that there is a preemption issue here.  The City through its corporate counsel's office has directed me to a regulation that says that the Section 8 program, that to the extent there are state or local ordinances, although it is voluntary, that to the extent there are state and local ordinances, that, for example, in the case of New York City , prohibits lawful income discrimination. Those types of regulations are not preempted.

O2Ds216c

So why shouldn't I follow that regulation?

MR. JOHNSON:  Well, because that regulation was created by the Housing and Urban Development Department and not by congress, and the Supreme Court in the *Weiss* case, which I cited in my papers, actually says that when the issue of preemption comes up, you know, administrative agencies of the federal government don't get to determine what congress' intent was.  And beyond that, the Second Circuit has already determined what congress' intent was, so I don't think that what the administrative agency has to say about that matter really matters.

And as I think the court is probably aware, the Supreme Court this year is going to be hearing a case that is going to potentially look into the deference that is paid administrative agencies generally in federal jurisprudence. That case may well be important to the determination of whether or not we listen to what administrative agencies think congress meant when it passed a statute.

So, you know, the other piece of it is there is a second sentence in that provision.  That second sentence says that, while congress or whoever, the HUD doesn't think congress meant to preempt these lawful source of income statutes, it also says that regulations can't change anything in federal -- that state courts can't or state law can't change anything in regulations.  So if there is a conflict between regulations

O2Ds216c

themselves and state law, what HUD is saying is that federal regulations control.

So what we're asserting here is in real conflict between the Section 8 regulations and the state's law.  Not only is there a conflict in the sense that congress intended this to be a voluntary program and congress' intent under the *Hines* v.something.  I can't remember right off the top of my head.  It's in my moving parties.  Happy to provide it.  What congress intends can be a source of preemption.  Again, that is going to come up again, I think, in the *Cantero* case before the Supreme Court that they are hearing argument on, on the 27th of February.

But, you know, beyond the expressed intent of congress as a voluntary program, there is also things within the regulations and the statute itself that make Section 8 mandatory impossible.  So there is a number of categories of parties that can't be forced to take Section 8 because it's actually unlawful for them to take Section 8 under federal regulations and/or the statute, including, you know, members of congress, members of state legislatures, members of the public housing authority, and any landlord that has been debarred from participating in Section 8.  The way a landlord can become debarred is by violating a HAP contract, housing assistance payment contract, which is a contract you have to sign if you participate in Section 8, by discriminating or having been

O2Ds216c

found to discriminate against tenants by standing to evict certain tenants, including tenants using drugs or engaged in criminal activities.  Of course what the federal government think Social Security illegal with respect to using drugs is different than what the state thinks is illegal with respect to using drugs, especially with marijuana.  Any landlord that fails to do any of those things or is in one of those categories cannot, under state or federal regulation participate in Section 8.

So it's impossible --

THE COURT:  We're not in that situation, correct?

We're not in that situation, your client?

MR. JOHNSON:  We're not in this situation , no.  But the statute is impossible to enforce as written, so we think that that is enough to show preemption.  The whole structure of the statute is built around its voluntary nature.  So landlords are supposed to be encouraged under Section 8 under federal law.  One of the ways encourage them is pay for the tenant's housing, but also if it's voluntary, when they sign a HAP contract giving up certain rights, that it's not a problem because they voluntarily have done it.  They haven't been coerced into doing it by the state.

So, you know, the whole idea that a landlord could be compelled to take Section 8 runs completely against the entire structure of Section 8.

O2Ds216c

THE COURT:  Now, the City also brings to my attention the case *University Club v. City of New York*, which talks about Younger abstention.

Why isn't that case dispositive of my inability to adjudicate your cause of action?

MR. JOHNSON:  So, for two reasons.

Number one, the constitutional question that was raised in universe city club was an as employed constitutional question, not a facial challenge to the law.

What the Second Circuit noted in 2niverse city club was that the remedy for a party in my client's position, were they being prosecuted in an administrative proceeding, is to do a CTL article proceeding in state court to essentially review the administrative decision that they think would infringe on their constitutional right.

The problem is, as the Second Circuit noted, CPLR Article 78 cannot be used to bring a facial challenge against the City's law, and because we're bringing a facial challenge, our rights are not fully vindicated or cannot be fully vindicated in state court.

THE COURT:  But you can on appeal, can't you?

I'm sorry.  You can on appeal, can't you?

An appeal.

MR. JOHNSON:  Not Article 78.  That's what the Second Circuit said, not in an Article 78.  That which is an appeal of

O2Ds216c

the administrative proceeding.  If you can't raise it at the trial court level Article 78, they will not let you raise it for the first time on appeal.  So that's a problem.

Beyond that, the status of the case in *University Club* is very different from the case here.  In *University Club* there was a complaint that was actually filed by a person who believes that they were wronged and that they were being discriminated against, and there was a probable cause determination before or pending.  Well, that happened while that case was pending.

Here, there is no complaint that's been filed and there has been no probable cause determination.  So the investigation that they are talking about, that the Second Circuit is talking about in *University Club* is the time between when the plaintiffs filed with the Commission of Human Rights or State Division on Human Rights, really the same thing, and a finding of probable cause.  They are doing an investigation to see if there is even enough cause to have a formal proceeding.

Well, here, there is no complaint that's filed, so they aren't doing that.  And the investigation that the Second Circuit found to be sufficient, the only sort of investigation they've done is a pre-investigation, a pre-complaint investigation, which is really very nothing.  Especially here, because we said in the verified pleading we're not accepting Section 8, we don't participate in the voluntary program.  So

O2Ds216c

they don't need anything to show a violation of the statute.

THE COURT:  Except that the City has suggested in its papers, I think, that you created this situation and you lured them into a position where they believed that you were, in fact, considering entering into the Section 8 program, and only at the very last minute, after the time has run for you to engage with the City and without giving them notice, filed this ex parte petition.

MR. JOHNSON:  Well, respectfully, your Honor, we address that in an affidavit from my client, essentially what happened is this.  My client is a trust.  A trust itself doesn't manage the property.  There is a property manager that goes by the name of Homefront Management.  The name of the country is Motley Management LLC.

What it does is accepts applications, processes the applications, and then puts tenants in place.  In this case my client, the party that works for Homefront Management who is not the party in this case, they got a call from the prospective tenant.  The prospective tenant says, Hey, I want to use an emergency housing voucher which is under Section 8. And, you know, the person receives the call turns to her manager and says, Do we take Section 8.?  The manager says, I don't know.  I have to look into it.

The manager did research and came to the opinion that it was a voluntary federal program, and without really getting

O2Ds216c

into the law, without hiring a lawyer, and said, No, we're not going to participate. Then the commission -- well, then the tenant threatened to call the Commission. The Commission ultimately was called and got involved, and the property manager said, Yes, we as the property manager will participate in Section 8. They actually filled out all the paperwork necessary to do that, and it wasn't until they provided that to New York City Housing Authority that NYSHA said, Well, actually it's the landlord that has to fill this out. You're not actually the landlord.

We were all confused at this point. Now we're asking the landlord to do it. They had gone back to the landlord or try to, and in this case the landlord is a trustee of a trust. And the trustee is unavailable. He's sick and then he's out of the country. But ultimately, when he is available and he's back in the country, I get retained. And they ask me, Should we do this? And it was my opinion it's an unconstitutional statute. And essentially they decided on the 24th, when they got the letter on January 24, when they got the e-mail that I also got from the City saying there is two days left to comply, please comply, they had to make a decision.

Now, if I had responded to that e-mail, Hey, we're not going to comply, I think they would have filed a complaint that day. Two days is not springing them along. A decision was made two days where we filed this proceeding, and it was done

O2Ds216c

like you said, ex parte, because I didn't want them to essentially moot my arguments by filing a complaint while I was arguing they shouldn't be allowed to file a complaint so we can avoid Younger abstention.

THE COURT:  I think based on your telling of the facts, it sounds as what my kids would say, a "you" problem. You know, your client and its managing agent were not on the same page.

But in any event, why don't you tell me what your irreparable harm is here.

MR. JOHNSON:  Sure.

So the irreparable harm is two parts.  It's the lack of ability to proceed in federal court.  Ultimately Younger abstention, it applied because the court finds that there is a reason this should be in state court, or doesn't find that today, but we don't get injunction.  The Commission files its complaint and then the court later changes its mind and says, now I'm going to apply Younger abstention because there is a complaint.  The irreparable harm is going back to the administrative proceeding.

They are, as I said before, we don't get to bring our facial challenge to the statute because CPLR Article 78 doesn't let us do that.  We don't get to reply on the Second Circuit's binding authority on this case, which is not necessarily binding on the administrative body or even a state court.  It's

O2Ds216c

persuasive, it should be very persuasive, but not binding.

So here this court is controlled, when it comes at least to preemption, by the decisions that was reached in the *Salute* case.  So yes, I think --

THE COURT:  I'm sorry.

MR. JOHNSON:  -- there is irreparable harm because we can't --

THE COURT:  In what case, *Salute*?

MR. JOHNSON:  I'm sorry.  I'll give you the full citation.  It's *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1988).

THE COURT:  OK.  Thank you.

Mr. Matza-Brown.

MR. MATZA-BROWN:  Yes, your Honor.  That's exactly how it's pronounced.  Thank you.

Good afternoon.  I think I'll start, your Honor, where you left off with my friend on the other side.  I think I just want to make clear from the outset that there are different independent grounds for denying this motion.  I want to make clear from the outset that this motion, your Honor, is a motion by the plaintiff to compel a City agency to stop its enforcement efforts.  This motion, your Honor, is not for the court to dismiss the complaint.  All the harms that I'm hearing from counsel on the other side are harms that would be suffered if your Honor dismisses this action, and we're not at that

O2Ds216c

stage yet, right.

The only question before the court now is does the court have to stop an agency from its statutory duties, right. The Commission is just following its statutory duties under the law, and the relief that is requested is the extraordinary relief of this court saying the agency has to stop.  That's, I think, one important point to make.

There is a question of abstention, right, that your Honor discussed, and that question, your Honor, hinges on, under the *Culvert* case and under *University Club*, only when there administrative proceedings would permit the plaintiff to raise constitutional arguments.  And so the abstention is warranted and the court shouldn't be enjoining that proceeding.

Separately, your Honor, there are three other reasons to deny the motion, and those are just under the traditional preliminary injunction factors.  There is under irreparable harm and whether there is a showing of success on the merits and then public interest.

I want to go through each of those, your Honor, to show why I think the plaintiff fails --

THE COURT:  Well, before we get there, Mr. Matza-Brown, why don't we talk about abstention just a little bit more.

If you would address the procedural differences between this case and *University Club* that Mr. Johnson

O2Ds216c

described.

MR. MATZA-BROWN: Yes.

THE COURT: Because here there is no complaint yet, correct?

MR. MATZA-BROWN: Right, there is not a formal complaint. There were complaints raised through, like, in the 301 process, right. There were complaints from a citizen saying, I got an e-mail saying we don't take vouchers, right. That was how this case started, which is how a lot of these cases started or start, where a person who has various sorts of public assistance, right, your Honor, it could be Section 8 voucher, it could also be a City voucher, it could be food stamps. The source of income law is broad.

That's why, as I'll get to later, this is not a facial challenge. this is an as-applied challenge. leaving that aside, when somebody goes to the Commission and says, hey, the landlord says they don't take you. I think, your Honor, the point I'm trying to make, right, is that there was no formal complaint filed yet. And as we explain in our papers, one of the reasons that the Commission held off on that is they were trying to resolve this amicably. They had somebody come to them who said, I've been told this landlord doesn't take vouchers. But then, as often happens, the Commission tried to work with the landlord. They tried to explain what the local law says, and for a while -- and it sounds like up until the

O2Ds216c

point where they retain new counsel -- they were actually going to rent the an apartment, and then they got new counsel who persuaded them to do otherwise.

I think, your Honor, that I think as a technical matter, my colleague on the other side may be correctly describing *University Club*.  But I think that those are labels, right.  Informal versus formal investigations, informal versus formal complaints which are up to the agency itself, right.  And so if the court were to find that Younger abstention doesn't apply here, right, and the court were to enjoin the agency from continuing with its proceeding here, right, the incentive would be that the agency, anytime it gets a complaint of no voucher, it can do a formal complaint immediately because otherwise the federal courts are going to be able to stop their proceedings.

So it is consequential, your Honor.  It's very consequential if you were to grant this injunction, because what it would say is that the agencies need to be racing, right, they need to be racing now, instead of trying to --

THE COURT:  They need to be what?

MR. MATZA-BROWN:  They need to be racing to file what I guess is deemed a formal complaint, as opposed to just having an informal complaint from a citizen of voucher discrimination.

THE COURT:  So what.

So what.  I mean, and then so they have to move

O2Ds216c

quickly, and what is the harm?

MR. MATZA-BROWN:  I think the harm, your Honor, under abstention would be, as a policy matter, you would have, as soon as the commission gets a report someone said no voucher, they are going, as a policy matter, your Honor, right, instead of trying to work with landlords, educate them on the law, they have to begin formal adversarial proceedings and adjudication.

I think it's not in the public interest.  I do want to pivot to the other prongs because abstention, your Honor, is just about whether there is a state interest and whether or not there are adequate state remedies, and that is the only inquiry for abstention.

Separately though, one, the plaintiff has to show the traditional preliminary injunction factors, right.  And I think that most clearly there is no irreparable harm here.  We cite plenty of cases, including from the U.S. Supreme Court, about having to go through a state administrate proceeding does not inflict irreparable harmful stop.

THE COURT:  Except Mr. Johnson, Mr. Johnson argues that your client irreparably harmed because he is precluded from changing the constitutionality of the statute or regulation itself.

Is he correct about that?

MR. MATZA-BROWN:  No, your Honor.

This is a motion to enjoin the agency moving forward

O2Ds216c

with the proceedings.  It's not the City's motion to dismiss, right.

I don't understand.  He's taking a lot of logical leaps forward, right.  Irreparable harm has to be imminent harm if injunction is denied, right.  All that happens if this injunction is denied is the agency is allowed to continue with its statutory duties under local law and then this federal lawsuit proceeds and we move to dismiss, or we answer and we argue the merits before your Honor.  We may argue abstention as well, right.

But I don't understand how the agency proceeding, a failure to enjoin that, harms the plaintiff here.  The only harms he has is to face agency proceedings.  He can argue if we move to dismiss, right, dismissal is inappropriate because of the harm it would inflict.  I don't know if that is a winning argument or not, your Honor.

But the harms he describes are facing an agency proceeding and the harms he would face if he loses before your Honor on the merits, those aren't irreparable harms justifying the extraordinary relief of enjoining a government agency from doing its statutory duties here.

THE COURT:  OK.

MR. MATZA-BROWN:  On the merits, your Honor, the only -- I think on the merits, one thing I want to make clear, this is true for the entire motion, is the plaintiff has

O2Ds216c

pivoted from an applied challenge to a facial change.  And the reason that we know that is because, if you go to page 11 of the plaintiff's opening papers, the plaintiff is discussing the *CHIPS v. City of New York* Second Circuit case, *Community Housing Improvement Program v. City of New York* that the circuit decided last year involving rent stabilization law.

What the plaintiff says is that that case, that Second Circuit decision from last year doesn't foreclose his claims on the merits here because that case involved a facial challenge. And here, he is bringing as as-applied challenge.

Your Honor, that was the motion we responded to in our papers was a motion that says we're not making a facial challenge here, we're making an as-applied challenge.  Then on reply when the plaintiff realized, Oh, well, geez, my as-applied challenge has a lot of problems that the City brought up, he now brings it to a facial challenge.

Your Honor can't grant an injunction on that kind of motion practice, right.  The City gets notice of the motion that's actually made and the response to that motion, and the plaintiffs really can't pivot to a facial challenge.  But I think that now that the plaintiff has conceded he's only making a facial challenge, it's even more obvious that that challenge is false on the merits.

As your Honor I'm sure is aware, a facial challenge, you look at the face of the statute.  The facial challenge of

O2Ds216c

the City's discrimination law under the Fourth Amendment would need to show some sort of illegal search or seizure on the face of the statute.  That clearly does not exist.

It would need to show a taking on the face of the statute.  Again, that clearly does not exist.  The takings argument that the plaintiff outlines has to do with what would happen a year or two in the future if it tried to raise rent for a Section 8 apartment.

The only claim that I think is arguably a facial one is the preemption argument, so I want to spend some time on that, your Honor.  Because you discussed that for a bit with my colleague on the other side, and that preemption argument, as we mentioned, has been rejected by every court that has considered it.

But I want to dig into why that is, and I want it dig into why the *Salute* case from the Second Circuit doesn't compel the opposite result at all and, in fact, many courts considered *Salute* and said *Salute* finally decided, but it doesn't compel the opposite result.

So, your Honor, for conflict preemption, there are sort of two --

THE COURT:  I'm sorry, sir.  I'm sorry, sir.

For what preemption?

MR. MATZA-BROWN:  For conflict preemption, right, which is the only conflict -- conflict preemption, yes, as

O2Ds216c

opposed to field preemption, your Honor.

Am I speaking loudly enough?

I'm on a headset. I wonder --

THE COURT: No, no, no. I just didn't quite understand that word when you said it.

MR. MATZA-BROWN: No problem, your Honor. I'm getting over a bit of a cold.

So for conflict preemption, your Honor, a plaintiff can show conflict preemption either where a conflict arises, such that you cannot comply with both state and federal law or where state or local law stands as an obstacle to be accomplishment of the purposes and objectives of the federal law, right. So plaintiff hasn't shown either of those.

I think on this point, too, your Honor, as you point out, conflict preemption only preempts to the extent there is an actual conflict, right. The landlord here is not in any of the positions of other landlords where he said a conflict might arise. The inquiry can end there.

But I want to get to the point about a conflict between the purposes of the law, because this *Salute* case from the Second Circuit finds that under federal law, there is no mandatory participation in Section 8. It's a voluntary program under federal law. And as you point out, the regulations say that is not meant to preempt anti-discrimination laws like the ones that the City has.

O2Ds216c

Perhaps more importantly is what the Second Circuit says in *Salute* about the purposes of Section 8. Because when we're looking at conflict preemption, we look at the purpose of the federal law and we look at whether local law conflicts with that purpose. And the two times that the Second Circuit describes the purpose in *Salute*, it says this. The first time it says the purpose of Section 8 is to promote access to decent and affordable housing for lower income households. The second time the circuit says the purpose of Section 8 is to increase the availability of low income housing.

The City's anti-discrimination laws are completely consonant with those purposes and indeed promote those purposes. As your Honor knows from the *Gold Bar* decision that you authored just last September, low income folks can't use their voucher if they are subject to discrimination for trying to use the vouchers. It makes it hard for them to find and secure stable housing. The purpose of Section 8 is for those vouchers to be used so the voucher holders can use them, and that is what the City anti-discrimination law ascribes for as well.

THE COURT: Mr. Matza-Brown, you will acknowledge that there is, at least at a certain level, a tension between the statement that Section 8 is completely voluntary with the regulations in New York that say you can't deny Section 8 voucher holders who have a lawful income streaming from that

O2Ds216c

voucher.

MR. MATZA-BROWN:  Your Honor, the Supreme Court of New Jersey and Massachusetts both expressly considered that argument and rejected it.  They looked at *Salute* and said nothing in *Salute* suggests that this is preempted.  I think that, your Honor, that's because *Salute* is saying that under federal law, right, federal law does not make acceptance of Section 8 vouchers mandatory.  Doesn't say anything about discrimination one way or the other.

There are plenty of federal laws that allow the states leeway in how these programs are administered and in having other laws related to those federal laws, right.  So that's not conflict preemption.  Conflict preemption has to be an actual conflict, right.  There is no field preemption here.  The plaintiff concedes that.

And so the fact that the Second Circuit, you know, in a case having nothing to do with laws like this, right, simply found that federal law doesn't require Section 8 vouchers to be taken, but permissive program doesn't create a conflict, especially when you look, your Honor, at the purpose of the law, as the court explains in the *Salute* case.

THE COURT:  OK.

MR. MATZA-BROWN:  Finally, your Honor, I do think it's worth noting that there is really not even an attempt by the plaintiff to demonstrate the public interest for the injunctive

O2Ds216c

relief that the landlord seeks here, which is a separate prong that the plaintiff has to show.  I think in sum, your Honor, your Honor could deny the motion on abstention grounds, but also any of the three prongs of the standard preliminary injunction test warrants denial of the motion as well.

THE COURT:  Thank you.

Mr. Johnson, I'll give you an opportunity to respond briefly.

MR. JOHNSON:  Thank you, your Honor.

I want to briefly address the question that was raised about whether we're making a facial or as-applied argument on each of our three separate bases to find this law unconstitutional.

With respect to our arguments on takings, we're making a facial argument because, as was pointed out, it's not really ripe for us to make an as-applied argument.  But with respect to the facial -- I'm sorry.

With respect to the Fourth Amendment argument, that is both facial and as-applied.  And with respect to, I don't know, if the facial or as-applied are the right terms for preemption.  But to the extent that they are, we're making facial and as-applied there as well.  But primarily, I suppose, facial because, you're right, that we don't fall into any of those categories that are necessarily barred from taking Section 8.  Although my client very likely could fall into one of those

O2Ds216c

categories at some point down the road, were it to violate a HAP contract, for example.

The point there is really with respect to preemption. There is so many ways a landlord can be prevented from participating in Section 8 under federal law that it has to find both congress' intent and the regulators, to the extent they are respecting congress' intent, that this be a voluntary program.

So I differ with the reading of *Salute*. I don't think that *Salute* was just talking about whether or not the statute or the requirements of the Section 8 was voluntary or not under federal law because the issue there was a landlord under a different type of Section 8, where they took a 30-year mortgage and at the end of that 30-year mortgage, Section 8 would allow them to opt out of Section 8 and no longer take Section 8 tenants because they had paid off their mortgage, which was supported by the federal government.

And the City had a different view and passed a law that said that if you end your mortgage with Section 8, you have to offer the building to the tenants. They have a right of first refusal. And what the Second Circuit found was that the City's law there was preempted because it essentially forced the landlord to continue to participate in Section 8.

So preemption is absolutely baked into the *Salute* case and the concept of the voluntary nature of the statute is baked

O2Ds216c

in fully into its decision and its findings with respect to what congress intended.  So, you know, our Fourth Amendment argument is, again, I think a very strong one.  Certainly there was a state court decision, *People v. Commons West*, which I was the attorney of record in, where a judge in Tompkins county -- explicitly Cortland County in the West Law, but the judge is in Tompkins County -- and ultimately sided with us and said that by forcing a landlord to take Section 8, you're forcing them to waive their Fourth Amendment rights without a warrant procedure.  So we are well-established on the merits.

As far as --

THE COURT:  Well, let me ask you about that because I did read that decision, Mr. Johnson.

MR. JOHNSON:  Yes.

THE COURT:  And isn't it true that we aren't nearly there yet?

I mean, I guess there is a standing argument.  But nothing has been determined as yet, and so what's the harm to you going through the process of the administrative hearing and making those very same arguments?

MR. JOHNSON:  Well, that's not a problem with respect to the administrative hearing.  The problem is the facial challenge.  If we want this law stricken down not just for my client but for all landlords, which is one of the things my client wants to do and has a right to do, to make a facial

O2Ds216c

challenge, they should be allowed to do that, and they can't do that through the administrative hearing.

So, you know, beyond that, and I just want to touch on the public harm.  The City takes a view that the only public that matters is the renting public.  The public doesn't, you know, when it comes to landlords, they are not part of the public.  Their interests are second tier or don't count, and I don't think that's right at all.

If you're a landlord, if you're an employee of the landlord and you have a cell phone and your cell phone has e-mails on it that are e-mails that deal with your job in dealing with whether or not you're renting to people with Section 8, and the federal government comes in and says the assignments HAP contract, you have to give us access to all your computerized devices, those interests aren't inferior to those of tenants and those are the rights that we're seeking to vindicate in this lawsuit.

THE COURT:  I guess that's true as far as it goes. But once you choose to be a landlord and make your properties available for rental to the public, you are also subject to a number of regulations that dictate in some fashion, for better or worse, how you deal with the public.

What's so different about this one?

MR. JOHNSON:  The idea that someone chooses to be a landlord, it's a very, I don't know, abstract idea, right.

O2Ds216c

So the idea is the owner, you own a building that has a bunch of apartments in it.  What else are you going to do with it than rent them out?  You're choosing to be a landlord, opposed to owning the building and the idea is that you have to divest yourself of a piece of property because the City passed a law saying that you have to waive your Fourth Amendment rights.

THE COURT:  Except that you're not --

MR. JOHNSON:  The New York State Court of Appeals says that is not right.

THE COURT:  Except that when you purchase an apartment building, it should come as no surprise that, you know, what you are probably going to do is rent those apartments and be subject to the regulations that attended to those rentals, so...

MR. JOHNSON:  What about the parties who own their apartment building before that law was passed; they then have to divest themselves of those apartment buildings in light of the law?

THE COURT:  I'm not understanding your point.

MR. JOHNSON:  By being a landlord, you have to waive your Fourth Amendment right was exactly what the Court of Appeals considered in the *Sokolow* case and found was not the case.

Now, I understand the New York State Court of Appeals

O2Ds216c

issues decisions on what constitutional don't bind this court, but should be very persuasive. It's been the law of the New York for a long time, not subject to a Supreme Court challenge that I'm aware of.

THE COURT: OK.

MR. JOHNSON: In fact, the Second Circuit came to the same conclusion, essentially, when it said that certain inspections are OK because there is a warrant provision. There is a provision that says if you want to come in and we don't consent, you can go get a warrant.

But that's not how Section 8 is written. Section 8 doesn't say that if the landlord doesn't let HUD in, that HUD can go get a warrant. And the Special Agents, the people that have arrest powers, which every agency has, they aren't barred by this warrant requirement because it's not written into the statute.

In fact, they assume because you sign this contract saying that HUD shall have access to your computer records, your cell phone, which seemingly when this regulation was likely enacted, your cell phone, home computer, and all sorts of devices that may or may not have stuff to do with your job as a landlord on them, HUD has access to.

THE COURT: OK.

MR. JOHNSON: Just because you work for a landlord or just because you are a landlord, you shouldn't have to give up

O2Ds216c

your Fourth Amendment rights.

THE COURT:  OK.  Mr. Matza-Brown, I'll give you two minutes to respond, if you wish.

MR. MATZA-BROWN:  Sure.

I think, your Honor, I think the point that you made, your Honor, about this Fourth Amendment issue is the correct one.  You can look at the HAP contract, which is not as broad as plaintiff's counsel contends.  It talks about accessing information pertinent to the contract as the agencies may reasonably require.

And the fact of the matter is, your Honor, we don't know what consequences there would be if a landlord, you know, refused to respond to a reasonable request for information because it doesn't happen, right.

Landlords are using this as a shield -- I'm sorry -- a sword, not a shield.  By using this provision in the HAP contract to try to challenge the discrimination law, it's clearly not a facial challenge.  The City's law says nothing about searches at all.  And as we know from the *Salute* case, Section 8 changes all the time, right.  You have to dig deep and make a lot of inferences and guesses about what would happen to figure out how this would actually play out if a planned landlord were to say, I'm not going to consent to a search.

What we know from the special needs doctrine, your

O2Ds216c

Honor, which postdates *Sckolow*, is that there is probably no Fourth Amendment interest at all.  Which means that, you know, as-applied, this provision isn't infringing any rights whatsoever, whether you're calling it consequential or not, because the special needs doctrine would permit a search for the limited purposes here in any events.

Just quickly, your Honor, I just want to address one final point on conflict preemption which my friend on the other side just went over a minute ago, which is this notion of how Section 8 forbids certain landlords from participating, right.

So one example is the Section 8 regulation have conflicts of interest provisions.  If you work for a public -- if you're a member of a public housing short, you can't be a Section 8 landlord.  The fact that Section 8 doesn't allow everyone to participate doesn't create a conflict because the law we're talking about, the City law is about discrimination, right.  And if I'm a voucher holder and I go to a landlord and I say want to use my voucher, the landlord says, I'm sorry, the federal regulations don't allow me to take that voucher, that's not discrimination, right.

The local law allows for legitimate non-discriminatory reasons to deny a rental application and complying with federal law clearly would be such a reason, right.  So the plaintiff is trying to manufacture a conflict that wouldn't apply to this landlord in order to, you know, make a meritless attempt to

O2Ds216c

validate this law.

THE COURT:  Thank you.

OK.  So here is where I come down to.  The preliminary injunction will not issue for the reasons primarily set forth in the City's brief.

First of all, I do think that the injunction at this juncture would violate the abstention doctrine of *Younger v. Harris* because, as the Second Circuit has held, Younger abstention federal courts from halting the administrative investigations and potential enforcement actions, and that is procedurally where we are in this case.

I do find, also, there is no irreparable harm in requiring the plaintiff, 126 29th Street Trust, to go through the administrative proceeding, the administrative process. There is no basis on which to find that such a process requiring them to go through such a process would constitute irreparable harm.  And to the extent there is any fine that is issued, that, of course, is purely monetary and cannot serve as a basis for irreparable harm.

With respect to likelihood of success on the merits, the case law is, at least at this juncture and may change in the future, maybe in the near future as Mr. Johnson suggests, that the process of going through the adjudicatory process and issuing a preliminary injunction at this point does not constitute a taking.

O2Ds216c

I do find that the claims that are brought at this juncture are not yet ripe.  They are still hypothetical, and it may well be unlikely, although it may well be because it's speculative at this juncture, that the plaintiff here will be successful in its claims or in its positions before the agency.

Finally, I find that the public interest does not favor the plaintiff here.  While it is certainly the case that landlords have rights, they have such rights as they were aware of when they entered the market, and those rights are circumscribed by certain regulations which include the fact that they are not able to discriminate against those who have lawful sources of income.

Accordingly, I find that the injunction should not issue.

Now, Mr. Matza-Brown, when can you file an answer to the complaint?

MR. MATZA-BROWN:  Your Honor, I expect that we're going to seek a premotion conference on a motion to dismiss.

THE COURT:  OK.  We talked about this at some length, so I will waive the premotion conference requirement and ask you when you can file your motion to dismiss.

MR. MATZA-BROWN:  Could we get a filing deadline in mid March, is that acceptable to your Honor?

THE COURT:  We are now in mid February, so sure.

Four weeks from today, Mr. Johnson.  I'll give you

O2Ds216c

four weeks to respond.  And, Mr. Matza-Brown, you'll get two weeks to reply.  We'll get those dates in just a moment.

In the meantime let me ask, because I am always a hopeful person, whether there have been any settlement talks as yet, Mr. Johnson?

MR. JOHNSON:  Your Honor, there haven't been any settlement talks and, frankly, I think there is a fundamental disagreement about the merits of this case, as it seems like they would not be fruitful at this juncture.

THE COURT:  Mr. Matza-Brown.

MR. MATZA-BROWN:  If counsel for the plaintiff says that there is no way to settle this, then I'm not going to second guess his judgment.

THE COURT:  OK.

MR. MATZA-BROWN:  He knows what he wants.  If he thinks it's impossible, I think for now that is probably correct.

THE COURT:  Let me just also say, I didn't emphasize this in issuing my decision, but I do think that this case does raise some very interesting issues and sum up the case law that would serve as the basis for a decision does seem to be in flux at this time.  I guess I understand counsel's position.

Ms. Trotman, can we get the dates.

THE DEPUTY CLERK:  Yes.

Just to confirm, was it two weeks or one week for the

O2Ds216c

reply?

THE COURT:  Two weeks.

THE DEPUTY CLERK:  OK.  The motion is due March 12.

The opposition is due April 9.

Reply is due April 23.

MR. MATZA-BROWN:  Will those dates be put on the court's docket, your Honor?

THE COURT:  It will be in a minute entry that will be put on ECF, yes.

MR. MATZA-BROWN:  Perfect.

Thank you, your Honor.

THE COURT:  OK.  With that, is there anything else that we should do today, Mr. Johnson?

MR. JOHNSON:  No.

Thank you, your Honor.

THE COURT:  Mr. Matza-Brown.

MR. MATZA-BROWN:  No, your Honor.

Thank you.

THE COURT:  OK.  In that event, we are adjourned. I'll thank counsel for your very thoughtful arguments and papers.

We're adjourned.

(Adjourned)