# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

216 EAST 29TH STREET TRUST ,

              Plaintiff,

     v.

CITY OF NEW YORK,

              Defendant.

Case No. 1:24-cv-595 (ER)

## **NOTICE OF MOTION**

Proposed Intervenor, Safe Horizon, Inc., by and through its undersigned counsel, hereby moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing the Amended Complaint for lack of standing and failure to state a claim.

The grounds for this motion are set forth in the accompanying memorandum of law.

Dated: April 15, 2024
New York, NY

                Respectfully submitted,

        By:    _/s/ Evan Henley_____
              Evan Henley
              THE LEGAL AID SOCIETY
              49 Thomas Street, Floor 5
              New York, NY 10013
              Tel.: 212-298-5233
              ewhenley@legal-aid.org

## <u>CERTIFICATE OF SERVICE</u>

I, Evan Henley, hereby certify that on April 15, 2024, I caused this Notice of Motion and attached Memorandum of Law to be filed on the Court's Electronic Case Filing system, which will provide electronic notice to all counsel of record.


/s/ Evan Henley_____
Evan Henley

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

216 EAST 29TH STREET TRUST,

                 Plaintiff,

       v.

CITY OF NEW YORK,

                 Defendant.

Case No. 1:24-cv-595 (ER)


# MEMORANDUM OF LAW IN SUPPORT OF SAFE HORIZON, INC.'S MOTION TO DISMISS


Date: April 15, 2024

Evan Henley
THE LEGAL AID SOCIETY
49 Thomas Street, Floor 5
New York, NY 10013
Tel.: 212-298-5233
ewhenley@legal-aid.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................ 1

   A.  The Section 8 Voucher Program ........................................................................ 1

   B.  The New York City Human Rights Law's Prohibition on Source of Income
Discrimination ........................................................................................................ 4

ARGUMENT ................................................................................................................. 4

   A.  The Trust does not have standing to bring its Fourth Amendment claims. ....... 5

   B.  The Trust has failed to state a claim upon which relief can be granted. ........... 7

      1.  The Trust fails to identify the policy it purports to challenge. ................... 9

      2.  The NYCHRL does not violate the Trust's Fourth Amendment rights. ... 10

         a.  The "consent" given in the HAP contract is congruent with constitutional limits, so
there is no infringement of the Trust's Fourth Amendment rights. ................................. 11

         b.  Because the HAP contract is signed in conjunction with the lease, an owner does
not have an expectation of privacy with respect to the unit and common areas............... 13

         c.  Neither the NYCHRL nor the Section 8 program penalizes an owner for failing to
consent to a search without affording an opportunity for precompliance review............. 15

      3.  The NYCHRL's prohibition on source of income discrimination is not preempted by
federal law........................................................................................................ 18

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Anobile v. Pelegrino*, 303 F.3d 107 (2d Cir. 2001)................................................................ 10, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................... 5, 7

*Austin Apt. Ass'n v. City of Austin*, 89 F. Supp. 3d 886 (W.D. Tex. 2015)........................ 1, 18, 19

*Bell v. Wolfish*, 441 U.S. 520 (1979) ............................................................................................ 8

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ........................................................................... 7, 9

*Cadet-Legros v. New York Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221 (N.Y. App. Div. 2015) .............. 19

*Camara v. Municipal Court*, 387 U.S. 523 (1967) ...................................................................... 15

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ..................................................................... 8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)...................................................... 7

*City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988)................................................ 8

*Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013) ....................................................................... 5, 6

*Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540 (2d Cir. 2023)............. 7, 9

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017) .................................................. 6

*Comm'n on Human Rights ex rel Watson v. PPC Residential*, OATH Index Nos. 2245/19,
    2246/19, 2023 N.Y. OATH LEXIS 342 (Sept. 11, 2023) ...................................................... 6

*Cox v. Dawson*, No. 3:18-cv-578 (JBA), 2020 U.S. Dist. LEXIS 4826 (D. Conn. Jan. 10, 2020)
    .......................................................................................................................................... 12

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) ...................................................................... 15

*Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141 (1982)............................................ 18

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006).............................................. 7

*Figueroa v. Forster*, 864 F.3d 222 (2d Cir. 2017)................................................................ 18, 19

*First Alabama Bank, N.A. v. Donovan*, 692 F.2d 714 (11th Cir. 1983) ...................................... 12

*Flynn v. City of Lincoln Park,* No. 2:18-cv-12187, 2020 U.S. Dist. LEXIS 9433 (E.D. Mich. Jan.
    21, 2020) ....................................................................................................................... 6, 13

*Gutierrez v. City of East Chicago*, No. 2:16-CV-111-JVB-PRC, 2016 U.S. Dist. LEXIS 138374
    (N.D. Ind. Sept. 6, 2016)..................................................................................................... 12

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013)............................................ 11

*Kosoglyadov v. 3130 Brighton Seventh, LLC*, 863 N.Y.S.2d 777 (N.Y. App. Div. 2008)........... 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 5

*Mamakos v. Town of Huntington*, 715 F. App'x 77 (2d Cir. 2018)............................................. 14

*Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205 (E.D.N.Y. 2010) ............................... 13

*Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978) ........................................................................ 15

*Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294 (2d Cir. 2022).................................................. 7

*Minnesota v. Carter*, 525 U.S. 83 (1998) ..................................................................................... 8

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) .......................................... 6

*New York City Dep't of Investigation v. Passannante*, 544 N.Y.S.2d 1 (N.Y. App. Div. 1989).. 16

*Palmieri v. Lynch*, 392 F.3d 73 (2d Cir. 2004)....................................................................... 9, 14

*Patel v. City of Los Angeles*, 576 U.S. 409 (2015) ............................................................... passim

*People v. Ivybrooke Equity Enters., LLC*, 107 N.Y.S.3d 248 (N.Y. App. Div. 2019) ................ 18

*Rakhman v. Alco Realty I, L.P.*, 916 N.Y.S.2d 581 (N.Y. App. Div. 2011)............................ 4, 19

*Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591 (2d Cir. 1993).................................................... 7

*Rosario v. Diagonal Realty LLC,* 872 N.E.2d 860 (N.Y. 2007) ................................. 20
*Rynasko v. New York Univ.,* 63 F.4th 186 (2d Cir. 2023) .......................................... 5
*See v. Seattle,* 387 U.S. 541 (1967) ......................................................................... 14
*Short v. Manhattan Apts., Inc.,* 916 F. Supp. 2d 375 (S.D.N.Y. 2012) ...................... 4
*Sibron v. New York,* 392 U.S. 40 (1968) ................................................................... 9
*Sokolov v. Vill. of Freeport,* 420 N.E.2d 55 (N.Y. 1981) ............................... 9, 11, 12
*Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016) ............................................................ 5
*Tapia v. Successful Mgmt. Corp.,* 915 N.Y.S.2d 19 (N.Y. App. Div. 2010) .......... 4, 18
*United States v. Chicago, M., S. P. & P. R. Co.,* 282 U.S. 311 (1930) ...................... 11
*United States v. Garcia,* 56 F.3d 418 (2d Cir. 1995) ............................................... 10
*United States v. Harris Methodist Ft. Worth,* 970 F.2d 94 (5th Cir. 1992) .............. 12
*United States v. Holland,* 755 F.2d 253 (2d Cir. 1985) ....................................... 8, 14
*United States v. Salerno,* 481 U.S. 739 (1987) ......................................................... 7
*Vonderhaar v. Vill. of Evendale,* 906 F.3d 397 (6th Cir. 2018) .............................. 6, 8
*Weisenberg v. Town Bd. of Shelter Island,* 404 F. Supp. 3d 720 (E.D.N.Y. 2019) ...... 9
*Wilkinson v. Forst,* 832 F.2d 1330 (2d Cir. 1987) .................................................... 8
*Wirth v. City of Rochester,* No. 17-CV-6347-FPG, 2020 U.S. Dist. LEXIS 180289 (W.D.N.Y. Sept. 30, 2020) ................................................................................................... 5, 6
*Wyman v. James,* 400 U.S. 309 (1971) ................................................................... 17
*Zap v. United States,* 328 U.S. 624 (1946) ............................................................. 12

**Statutes**
31 U.S.C. § 716 ........................................................................................................ 16
42 U.S.C. § 1437f ................................................................................................... 1, 2
5 U.S.C. § 401 ........................................................................................................ 16
5 U.S.C. § 402 ........................................................................................................ 16
5 U.S.C. § 406 ........................................................................................................ 16
American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (2021) ............... 1
N.Y. C.P.L.R. 2308 ............................................................................................ 10, 16
N.Y. Crim. Proc. §§ 690.05 *et seq.* ......................................................................... 16
NYC Admin. Code § 27-2003 .................................................................................. 14
NYC Admin. Code § 27-2123 .................................................................................. 14
NYC Admin. Code § 28-116.2 ................................................................................. 14
NYC Admin. Code § 8-102 ..................................................................................... 4, 7
NYC Admin. Code § 8-107 ................................................................................. 4, 7, 9

**Constitutional Provisions**
U.S. Const. amend. IV .............................................................................................. 8

**Rules**
Fed R. Civ. P. 12 ...................................................................................................... 4

**Regulations**
24 C.F.R. § 5.703 ................................................................................................ 3, 14
24 C.F.R. §§ 982.1 *et seq.* ...................................................................................... 2
24 C.F.R. § 982.201 .................................................................................................. 2
24 C.F.R. § 982.202 .................................................................................................. 2
24 C.F.R. § 982.302 .................................................................................................. 2
24 C.F.R. § 982.303 .................................................................................................. 2

24 C.F.R. § 982.305 ....................................................................................................... 3

24 C.F.R. § 982.309 .................................................................................................... 3, 13

24 C.F.R. § 982.405 ..................................................................................................... 3, 9

24 C.F.R. § 982.453 ....................................................................................................... 3

24 C.F.R. § 982.507 ....................................................................................................... 3

24 C.F.R. § 982.53 .............................................................................................. 5, 18, 19

24 C.F.R. §§ 982.601 *et seq.* ....................................................................................... 18

**Other Authorities**

New York City Dep't Hous. Preservation & Dev., *About Section 8* ............................. 2

New York City Hous. Auth., *About Section 8* .............................................................. 2

New York City Hous. Auth., *Housing Choice Voucher Administrative Plan* (Oct. 1, 2023) ........ 2

New York State Homes & Cmty. Renewal, *Subsidy Services Bureau* ........................... 2

U.S. Dep't Hous. & Urban Dev., *Housing Choice Voucher Data Dashboard* ............................ 2

**Charter Provisions**

NYC Charter § 398 ............................................................................................ 10, 14, 16

NYC Charter § 803 ................................................................................................. 10, 16

## PRELIMINARY STATEMENT

Plaintiff 216 East 29th Street Trust ("the Trust") brings a facial challenge to the New York City Human Rights Law's ("NYCHRL") source of income protections, alleging that participation in the Section 8 program compels building owners to waive their Fourth Amendment rights. It also argues that the NYCHRL is preempted by federal law.

The Trust does not have standing to bring this action. Its complaint rests on nothing more than speculative fear, as it fails to allege that it faces an actual or imminent warrantless search (or will at any time in the future). Moreover, its claims are baseless. New York City building owners who participate in the Section 8 program face no infringement of their Fourth Amendment rights, as they have the opportunity to seek "precompliance review" of any search before facing a penalty for failing to allow the search to proceed. A federal regulation establishes that anti-discrimination laws like the NYCHRL are not preempted, and every court to examine the issue has agreed. The Trust's claims should be dismissed.

## BACKGROUND

### A. The Section 8 Voucher Program

Congress created the Housing Choice Voucher Program—formerly, and still commonly, known as the Section 8 Voucher Program—to remedy the acute shortage of decent, safe, and sanitary dwellings for low-income families and to promote economic integration. 42 U.S.C. § 1437f(a); *Austin Apt. Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 889 (W.D. Tex. 2015). In 2021, in response to the housing crisis exacerbated by COVID, Congress created the Emergency Housing Voucher Program. American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4, 59-60 (2021). Emergency Housing Vouchers have the same general rules as Housing Choice Vouchers. *Id.* at 59. There are approximately 2.3 million active Housing Choice Voucher

Program participants in the United States,[1] and over 240,000 in New York.[2] The New York City

Housing Authority administers the largest Section 8 program in the country, with approximately

85,000 participants.[3] The New York City Department of Housing Preservation and

Development[4] and New York State Homes and Community Renewal[5] also administer Section 8

voucher programs in New York City. The Section 8 program is governed by the authorizing

statute, 42 U.S.C. § 1437f(o), regulations promulgated by the United States Department of

Housing and Urban Development ("HUD"), 24 C.F.R. §§ 982.1-.643, and the specific rules of

the Public Housing Agency ("PHA") that administers the voucher.[6]

   The HUD regulations lay out how the Section 8 program works. First, the PHA selects a

person from its waitlist, assesses their eligibility, and issues a voucher. *Id.* §§ 982.201-.202,

.302(a). The voucher has a limited term; if it is not used within that term or before the expiration

of any subsequent extension, the voucher holder will lose it. *See id.* §§ 982.302(c), .303. Second,

the voucher holder is responsible for locating a unit on the private rental market that meets

program requirements. *Id.* § 982.302(b). Third, after locating a unit, the voucher holder and

owner must submit a "Request for Tenancy Approval" and associated information and

documents to the PHA. *Id.* § 982.302(c). Fourth, the PHA inspects the unit to ensure that it

---

[1] U.S. Dep't Hous. & Urban Dev., *Housing Choice Voucher Data Dashboard*,
https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/dashboard (summary page)
(last accessed Mar. 30, 2024).
[2] *Id.* (filter by state, NY).
[3] New York City Hous. Auth., *About Section 8*, https://www.nyc.gov/site/nycha/section-8/about-section-8.page (last accessed Mar. 30, 2024).
[4] New York City Dep't Hous. Preservation & Dev., *About Section 8*,
https://www.nyc.gov/site/hpd/services-and-information/about-section-8.page (last accessed Mar. 30,
2024) (stating that program has over 39,000 participants).
[5] New York State Homes & Cmty. Renewal, *Subsidy Services Bureau*, https://hcr.ny.gov/subsidy-service-bureau (last accessed Mar. 30, 2024).
[6] *E.g.*, New York City Hous. Auth., *Housing Choice Voucher Administrative Plan* (Oct. 1, 2023),
*available at* https://www.nyc.gov/assets/nycha/downloads/pdf/hcpvadministrative.pdf.

complies with Housing Quality Standards ("HQS"). *Id.* §§ 982.305,[7] .405. Fifth, after reviewing the lease and ensuring compliance with other program requirements, the PHA will approve the assisted tenancy. *Id.* § 982.305. These requirements include "rent reasonableness," meaning that the rent for the unit is reasonable based on the location and unit features. *Id.* § 982.507. After this approval, the voucher holder can move into the unit, and the PHA will sign a Housing Assistance Payments ("HAP") contract with the owner. *Id.* § 982.305(c). The term of the HAP contract begins on the first day of the lease term. *Id.* § 982.309(c).

After the initial HQS inspection, the PHA must inspect the unit biennially. *Id.* § 982.405. HQS only apply to the subsidized unit, means of egress for the subsidized unit, common areas for residential use, and systems that directly service the subsidized unit. *Id.* § 5.703(a). After the HAP contract is signed, if the owner breaches it, the PHA may exercise rights and remedies including "recovery of overpayments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract." 24 C.F.R. § 982.453(d).

Nothing in the regulations authorizes or requires a PHA to perform a warrantless search or imposes a penalty on the owner for failing to consent to a warrantless search. Nothing in the regulations requires an owner to provide the PHA with access to its files or records; essentially the only information that the regulations require it to share is "information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere." *Id.* § 982.507(d).

The HAP contract provides that "the owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require." ECF No. 21, Compl., Ex. A, part B, para. 11(a). It further states that the "PHA, HUD, and the Comptroller General of the United

---

[7] The Trust does not appear to challenge the NYCHRL to the extent that it requires this initial, pre-HAP contract inspection. *See* ECF No. 21, Amended Complaint para. 76.

States shall have full and free access to the contract unit and the premises, and to all accounts and other records" that are relevant to the HAP contract, including electronic records. *Id.* paras. 11(b)-(c).

B.   **The New York City Human Rights Law's Prohibition on Source of Income Discrimination**

The NYCHRL prohibits various forms of discrimination in the rental housing market. NYC Admin. Code § 8-107(5)(a). Among the proscribed types of discrimination is discrimination because of "any lawful source of income." *Id.* § 8-107(5)(a)(1). "Lawful source of income" includes "any form of federal, state, or local public assistance or housing assistance including, but not limited to, section 8 vouchers . . . ." *Id.* § 8-102. The outright rejection of Section 8 vouchers is unlawful under the NYCHRL. *See, e.g.*, *Tapia v. Successful Mgmt. Corp.*, 915 N.Y.S.2d 19, 20 (N.Y. App. Div. 2010). So is the failure to complete forms required by the Section 8 program. *See, e.g.*, *Rakhman v. Alco Realty I, L.P.*, 916 N.Y.S.2d 581, 582 (N.Y. App. Div. 2011). Owners are required to bear the administrative burdens associated with accepting Section 8 vouchers. Allowing owners to "opt-out" of voucher programs based on these burdens would "effectively nullify the NYCHRL's source-of-income provisions." *Short v. Manhattan Apts., Inc.*, 916 F. Supp. 2d 375, 398 (S.D.N.Y. 2012).

## ARGUMENT

The Court should dismiss the Trust's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). The Trust describes various federal regulations and provisions of the HAP contract, none of which authorizes a PHA to perform a search of an owner's private property or records without a warrant or subpoena. It does not allege that it faces or has faced a Section 8 inspection or search or that it faces or has faced any penalty for failing to consent to an inspection or search. It does not allege facts regarding even one instance where a PHA or HUD

4

sought to penalize an owner for failing to consent to a search, let alone allege facts regarding a PHA's or HUD's policies for conducting inspections and searches. Despite the complete lack of factual support, it then claims that participation in the Section 8 program would result in the compelled waiver of its constitutional rights. ECF No. 21 at 10, 12. The Trust's conjecture does not satisfy the constitutional requirement of an actual or imminent concrete and particularized injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and does not plausibly state a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, there is no basis for its claim that the NYCHRL is preempted by federal law. *See, e.g.*, 24 C.F.R. § 982.53(d).

### A.  __The Trust does not have standing to bring its Fourth Amendment claims.__

A plaintiff must adequately plead that it meets all three requirements for constitutional standing, including that it suffered an "injury in fact" and that the injury is "fairly traceable" to the defendant's challenged conduct. *Rynasko v. New York Univ.*, 63 F.4th 186, 193 (2d Cir. 2023) (quoting *Lujan*, 504 U.S. at 560-61). "Injury in fact is the 'first and foremost' element of standing." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (emphasis in original) (citation and internal quotation marks omitted).

The Trust alleges that the NYCHRL unconstitutionally impinges its Fourth Amendment rights. To have standing to bring Fourth Amendment claims in the inspection context, a "plaintiff needs to present allegations or evidence that the government has actually conducted a warrantless search of plaintiff's property pursuant to the inspection ordinance or has imminent plans to do so." *Wirth v. City of Rochester*, No. 17-CV-6347-FPG, 2020 U.S. Dist. LEXIS 180289, at *10-11 (W.D.N.Y. Sept. 30, 2020); *see Flynn v. City of Lincoln Park,* No. 2:18-cv-12187, 2020 U.S. Dist. LEXIS 9433, at *13-20 (E.D. Mich. Jan. 21, 2020) (discussing similar

cases); *see also Patel v. City of Los Angeles*, 576 U.S. 409, 413-14 (2015) (stating that Los Angeles stipulated that the hotel owners had been "subjected to mandatory record inspections under the ordinance without consent or warrant").

  The Trust's allegations boil down to its speculative fear that a government agency will act unconstitutionally in the future. This is not sufficient to confer standing. *See Clapper*, 568 U.S. at 409-10; *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 151 (E.D.N.Y. 2017). The Trust does not allege that an owner has ever "acquiesced to a warrantless search due to the threat of a penalty" or that a PHA "has ever conducted an inspection without obtaining a warrant where consent was not given." *Wirth*, 2020 U.S. Dist. LEXIS 180289, at *13 (citing *Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 402 (6th Cir. 2018)). Indeed, the Trust's allegations are even more speculative than those in the cited cases challenging inspection ordinances. It does not directly challenge HUD regulations governing inspections. Instead, it challenges the NYCHRL requirement that owners accept Section 8 vouchers because its signing of a HAP contract could subject it to future warrantless inspections. As explained in *Commission on Human Rights ex rel Watson v. PPC Residential*, this additional layer means that multiple events would need to occur before the Trust could be penalized for preventing an inspection. OATH Index Nos. 2245/19, 2246/19, 2023 N.Y. OATH LEXIS 342, at *12-13 (Sept. 11, 2023). Because the Trust has failed to allege any facts about an imminent inspection or penalty, it has not alleged that it faces a "certainly impending injury," and it fails to meet standing requirements. *Clapper*, 568 U.S. at 409.[8]

---

[8] For the same reasons, the Trust's claims are not ripe. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("Constitutional ripeness, in other words, is really just about the first *Lujan* factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not "actual or imminent," but instead "conjectural or hypothetical.").

B.  **The Trust has failed to state a claim upon which relief can be granted.**

Assuming that the Trust's complaint satisfies standing requirements, the Court should dismiss its complaint for failing to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 299 (2d Cir. 2022) (citation and internal quotation marks omitted). While courts must accept all factual statements as true and draw all reasonable inferences in a plaintiff's favor, conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Additionally, a court must not accept legal conclusions as true—legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 678.

A facial challenge is a claim that "the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019). Put differently, a plaintiff must establish that "no set of circumstances exists under which the challenged act would be valid." *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023) (citation and internal quotation marks omitted). Even if the legislation may operate unconstitutionally in some conceivable situation, that is not enough to render it wholly unconstitutional. *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 595 (2d Cir. 1993) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Given that the NYCHRL does not itself require searches and also prohibits discrimination against users of other subsidy programs—including state and local programs that do not use Section 8's HAP contract, *see* NYC Admin. Code §§ 8-102, 8-107(5)(a)—the Trust's facial

7

challenge is meritless, *see Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006)

("A 'facial challenge' to a statute considers only the text of the statute itself . . . ." (citing *City of*

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 n.11 (1988))). However, the Trust's

Fourth Amendment claim is not really an "as applied" challenge related to its "particular

circumstances," either. It has never signed a HAP contract, ECF No. 21 para. 72, and no Section

8 inspection of its property could occur. Therefore, the Trust does not and cannot plead that it

faces or has faced an unreasonable search. *See Wilkinson v. Forst*, 832 F.2d 1330, 1338 (2d Cir.

1987) (stating that the test for reasonableness under the Fourth Amendment "'requires a

balancing of the need for the particular search against the invasion of personal rights that the

search entails'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979))); *Vonderhaar*, 906 F.3d at

401-02. The Trust's challenge to the NYCHRL's prohibition on source of income discrimination

is really a facial challenge to the portions of the HAP contract and Section 8 regulations that

relate to property and record inspections, and which are required by the NYCHRL. Its argument

is that the NYCHRL results in the compelled waiver of its Fourth Amendment rights because, in

the HAP contract, it gives consent to inspections that would otherwise be unconstitutional.

Whether the Trust's Fourth Amendment claims are analyzed as facial or as applied challenges,

they should be dismissed for failing to state a claim.

       The Fourth Amendment does not protect against all searches and seizures, only

unreasonable ones. U.S. Const. amend. IV. When an individual seeks to preserve an area or

sphere as private, and the expectation of privacy is reasonable, "official intrusion into that private

sphere generally qualifies as a search and requires a warrant." *Carpenter v. United States*, 138 S.

Ct. 2206, 2213-14 (2018). If the individual does not have a reasonable expectation of privacy in

a location or sphere, then there is no "search," and no warrant is required. *See, e.g.*, *Minnesota v.*

*Carter*, 525 U.S. 83, 91 (1998); *United States v. Holland*, 755 F.2d 253, 255 (2d Cir. 1985). In other circumstances, searches are deemed reasonable despite being conducted without a warrant. These include "searches pursuant to a regulatory scheme" that "need not adhere to the usual requirements where special governmental needs are present." *Palmieri v. Lynch*, 392 F.3d 73, 79 (2d Cir. 2004) (citation and internal quotation marks omitted).

To prevail on a facial Fourth Amendment challenge in the inspection context, plaintiffs must show that they face penalties for failing to consent to a search without first having had the opportunity to have a neutral decisionmaker review the search demand. *See Patel*, 576 U.S. at 419, 421; *see also Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 724 (E.D.N.Y. 2019); *Sokolov v. Vill. of Freeport*, 420 N.E.2d 55, 56 (N.Y. 1981). Fourth Amendment facial challenges are unlikely to succeed "when there is substantial ambiguity as to what conduct a statute authorizes." *Patel*, 576 U.S. at 416 (citing *Sibron v. New York*, 392 U.S. 40, 59, 61, n. 20 (1968)).

1. *The Trust fails to identify the policy it purports to challenge.*

The Trust is required to plead that "the law or policy at issue is unconstitutional in all its applications," *Bucklew*, 139 S. Ct. at 1127, but it has failed to allege any facts regarding what the relevant policies regarding property and records inspections actually are. Without delineating the policies at issue, the Trust cannot plausibly allege that there is no set of circumstances under which the policies would be valid. *See Cmty. Hous. Improvement Program*, 59 F.4th at 548.

Of course, the NYCHRL itself does not require or authorize a warrantless search. NYC Admin. Code § 8-107(5)(a). The HUD regulations discussed above do not mandate or authorize inspections or audits without a warrant or subpoena, nor do they establish penalties for the failure to consent to inspections. *See, e.g.*, 24 C.F.R. § 982.405. The only "facts" regarding inspections pleaded by the Trust are the contents of the HAP contract; the contract states that the PHA and

9

the owner "shall have free and full access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract . . . ," ECF No. 21 para. 42; *id.* Ex. A, part B, para. 11. Based solely on this paragraph, the Trust concludes that signing the HAP contract would serve as consent for Fourth Amendment purposes[9] and result in the compelled waiver of its Fourth Amendment right to be free from unreasonable searches. *Id.* paras. 42-46. What is missing from the complaint is any factual allegation regarding how this contractual term drives HUD or PHAs' policies or practices—namely, any allegation that HUD, PHAs, or any other governmental actor deem this paragraph to be consent for Fourth Amendment purposes and use it as justification to conduct a warrantless search of an owner's private property. This omission is glaring because PHAs, HUD, and the Comptroller General have numerous constitutional means at their disposal to obtain access to an owner's property or records, including administrative warrants, *e.g.*, NYC Charter § 398, administrative subpoenas, *e.g.*, *id.* § 803(f); N.Y. C.P.L.R. 2308(b), and contract enforcement actions, ECF No. 21, Ex. A, part B, para. 10(d). At minimum, there is substantial ambiguity about what conduct the HAP contract authorizes, meaning that the Trust cannot succeed on this facial challenge. *See Patel*, 576 U.S. at 416.

2. *The NYCHRL does not violate the Trust's Fourth Amendment rights.*

Assuming that the Court deems the terms of the HAP contract definite enough to analyze the Trust's Fourth Amendment challenge, the Trust's complaint still fails to state a plausible claim. Participation in the Section 8 program does not subject an owner to searches and penalties

---

[9] This is a curious contention given that "consent" for Fourth Amendment purposes is not viewed in the abstract: determining consent is a fact-specific inquiry that analyzes all of the surrounding circumstances, *see Anobile v. Pelegrino*, 303 F.3d 107, 124 (2d Cir. 2001) ("To ascertain whether consent is valid, courts examine the totality of all the circumstances to determine whether the consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." (quoting *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995))).

that would be unconstitutional had it not signed the HAP contract. The scope of the "consent"
given in the HAP contract is congruent with constitutional limits. Because the HAP contract
begins when the lease does, an owner does not have a privacy interest in the rented premises or
the common areas. A PHA in New York City may seek a warrant if an owner fails to consent to
an inspection. And most importantly, nothing in the HAP contract imposes penalties on an owner
for failing to consent to a search without first having had the opportunity to have a neutral
decisionmaker review the demand for the search. *See Patel*, 576 U.S. at 419.

      a.  <u>The "consent" given in the HAP contract is congruent with
constitutional limits, so there is no infringement of the Trust's Fourth
Amendment rights.</u>

The foundation for the Trust's claim is a 1981 New York Court of Appeals decision,
*Sokolov v. Village of Freeport*, 420 N.E.2d 55. *See* ECF No. 21 para. 61. In *Sokolov*, the New
York Court of Appeals held that a rental licensing ordinance was unconstitutional because it
conditioned the grant of a rental permit on the owner consenting to a warrantless inspection and
imposed a fine of $250 a day if the owner rented a unit without first obtaining the permit.
*Sokolov* falls in the long line of cases involving "unconstitutional conditions": the government
cannot deny a benefit to someone because they exercise a constitutional right (or, put differently,
the government cannot condition the grant of a benefit on the recipient's waiver of a
constitutional right),[10] *Sokolov*, 420 N.E.2d at 57 (citing *United States v. Chicago, M., S. P. & P.
R. Co*., 282 U.S. 311, 328-29 (1930)); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S.
595, 604 (2013)). When the unconstitutional condition automatically imposes a penalty or blocks

---

[10] The same day, the New York Court of Appeals affirmed the constitutionality of a rental licensing
ordinance where the municipality also required an inspection as a condition of obtaining a rental permit
but required either consent or a warrant. *Pashcow v. Town of Babylon*, 53 N.Y.2d 687, 688 (N.Y. 1981).
In *Pashcow*, there was no unconstitutional condition because the warrant option meant that a rental permit
applicant's Fourth Amendment rights were respected.

someone from obtaining a benefit, courts will declare the law containing the condition unconstitutional and invalidate it.[11] *E.g.*, *Sokolov*, 420 N.E.2d at 59. The unconstitutional conditions doctrine also guides courts' interpretation of certain contractual terms, like inspection provisions in public housing leases. Such provisions cannot amount to blanket "advance consent" to searches, because this would be an unconstitutional condition of obtaining the public housing benefit. *Cox v. Dawson*, No. 3:18-cv-578 (JBA), 2020 U.S. Dist. LEXIS 4826, at *17 (D. Conn. Jan. 10, 2020); *Gutierrez v. City of East Chicago*, No. 2:16-CV-111-JVB-PRC, 2016 U.S. Dist. LEXIS 138374, at *23-24 (N.D. Ind. Sept. 6, 2016).

This is not an unconstitutional condition claim. The Trust is not receiving a "benefit" from the government akin to a permit or employment. However, the same principles that animate the unconstitutional conditions doctrine influence courts' interpretations of government contracts. Notably, courts have held that open-ended contract terms similar to the HAP contract's paragraph 11, where consent to provide access is given in advance, permit only "reasonable searches as that term is defined under the Fourth Amendment." *First Alabama Bank, N.A. v. Donovan*, 692 F.2d 714, 719-20 (11th Cir. 1983); *United States v. Harris Methodist Ft. Worth*, 970 F.2d 94, 100-101 (5th Cir. 1992); *cf. Anobile*, 303 F.3d at 124-25 (holding that agreement to consent to searches of "persons and property" in racing license applications did not provide effective consent to search of dormitory rooms).[12]

In New York, where eligible owners cannot refuse Section 8 vouchers, it cannot be said that these owners enter into the HAP contract based on an "unconstrained choice." *See Anobile*,

---

[11] Assuming, of course, that the plaintiff has standing to bring the claim.

[12] *Zap v. United States* is not in conflict with these cases. *Zap* involved a fact-dependent, *ex post* analysis of a search, which related to a Navy contract during World War II (the heavily regulated defense industry) and was done with the permission of the petitioner's employees. 328 U.S. 624, 628 (1946) (stating that defense contractor agreed to permit inspection "in order to obtain the Government's business").

303 F.3d at 124. Therefore, were the question of the scope of the HAP contract's access provisions to come before a court, the court would find that the consent given in the HAP contract only extends to reasonable searches.[13] The rest of the court's analysis would depend on the particular facts of a given situation. So, there is no legal basis for the Trust to claim that the NYCHRL and HAP contract result in a compelled waiver of its constitutional rights. Moreover, as explained below, the Trust's consent is not needed for PHAs and HUD to conduct the inspections contemplated by the HAP contract.

    b. Because the HAP contract is signed in conjunction with the lease, an owner does not have an expectation of privacy with respect to the unit and common areas.

The HAP contract starts on the same day as the lease, meaning that a tenant is in possession of the subsidized unit during the entire term of the HAP contract. 24 C.F.R. § 982.309(c). Therefore, it is the Section 8 tenant, not the owner, who has the right to provide access for inspections of the premises. Consent from the owner is not needed or even valid because the owner has no expectation of privacy with respect to the leased premises. *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 234 (E.D.N.Y. 2010) (collecting cases); *Flynn*, 2020 U.S. Dist. LEXIS 9433 at *22-24 (collecting cases). Rather, the PHA must obtain consent for the inspection from the tenant. *See, e.g.*, 24 C.F.R. § 982.405 (stating that the PHA must inspect the *unit* "at least biennially during assisted occupancy") (emphasis added). To the extent that the PHA also enters the common areas of the premises during the inspection, the owner does not have an expectation of privacy with respect to those areas, either, given that they form part of

---

[13] The reason that access terms are needed in the HAP contract, despite HUD and the PHAs' independent ability to obtain access to the premises or records using constitutional means, is that there is a difference between seeking to obtain access and enforcing contractual rights if an owner hinders their lawful attempts to obtain access.

the leased premises and tenants can access them. *See, e.g.*, *Holland*, 755 F.2d at 255.[14] So, the PHA can perform nearly all inspections required by the HAP contract without implicating the owner's privacy rights whatsoever.

In limited circumstances, the PHA may need to inspect the systems that "directly service the subsidized unit." 24 C.F.R. § 5.703(a). These systems may not be in parts of the building that are accessible to tenants; they may be behind locked doors. However, heating, plumbing, electrical, and other systems in buildings without Section 8 tenants are already subject to inspection by multiple government agencies in New York City. *E.g.*, NYC Admin. Code § 27-2003(a); *Id.* § 28-116.2. If the PHA has cause to inspect a building system for which an access warrant is needed,[15] it will proceed in the same way as these city agencies do and obtain a warrant for the inspection. *See, e.g.*, NYC Charter § 398; NYC Admin. Code § 27-2123(a); *see also See v. Seattle*, 387 U.S. 541, 545 (1967) ("[An] administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure."); *cf. Mamakos v. Town of Huntington*, 715 F. App'x 77, 79 (2d Cir. 2018) (unpublished opinion) ("In each case [that analyzed the constitutionality of a rental permit scheme], the dispositive factor was whether the ordinance requires either consent or a warrant before a search is conducted.").[16]

---

[14] This is a different question from whether tenants may have a reasonable expectation of privacy in some common areas, which form part of their homes. *United States v. Lewis*, 62 F.4th 733, 743-44 (2d Cir. 2023).

[15] While the special needs exception arguably applies to all Section 8 inspections, in exigent circumstances involving a building system like the boiler, it would certainly make a warrantless search reasonable. *See Palmieri*, 392 F.3d at 81. Given the importance of such systems to the health and safety of tenants, owners are required to make them available for inspection, and they have diminished privacy interests in the areas where they are kept.

[16] If the Trust's complaint does challenge the initial Section 8 inspection, the agency's option to seek a warrant if the owner does not consent similarly satisfies constitutional requirements.

For these reasons, inspections of the premises under the HAP contract pose no constitutional concerns.

> c.  Neither the NYCHRL nor the Section 8 program penalizes an owner for failing to consent to a search without affording an opportunity for precompliance review.

*Patel* and its antecedents stand for the proposition that, if a government agency seeks to search private property or records, the individual with the privacy interest must have the opportunity to have a neutral decisionmaker review the demand before facing penalties for failing to comply.[17] *Patel*, 576 U.S. at 421; *Camara v. Municipal Court*, 387 U.S. 523, 538-39 (1967). In certain situations, like searches of nonpublic areas of a commercial enterprise, the government may need an administrative warrant.[18] *See Marshall v. Barlow's Inc.*, 436 U.S. 307, 320-21 (1978). In others, like records access requests, an administrative subpoena or similar mechanism would suffice. *Patel*, 576 U.S. at 421-22; *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984). The Supreme Court has not mandated a certain form of precompliance review; what matters is that the individual can obtain review of the reasonableness of the demand before suffering penalties. *See Patel*, 576 U.S. at 423 ("Of course administrative subpoenas are only one way in which an opportunity for precompliance review can be made available. But whatever the precise form, the availability of precompliance review alters the dynamic between the officer and the hotel to be searched . . . ."). In New York City, Section 8's regulatory scheme meets these requirements.

First, as discussed above, should a PHA wish to perform an administrative inspection of nonpublic area (including of the owner's computers), it could seek an administrative warrant.

---

[17] Of course, this assumes that no exception to the precompliance review requirement applies. *See, e.g.*, *Patel*, 576 U.S. at 418-19.

[18] An administrative warrant still requires probable cause, but the standard is relaxed compared to the criminal context. *See Camara*, 387 U.S. at 538.

*E.g.*, NYC Charter § 398.[19] Second, should a PHA, HUD, or the Comptroller General of the United States seek to audit the owner's accounts and records to determine compliance with program requirements, it could serve the owner with an administrative subpoena. For example, the New York City Department of Investigations is empowered to conduct investigations and issue administrative subpoenas related to any person or entity who is paid money through any city agency. *See id.* § 803(f); N.Y. C.P.L.R. 2308(b); *New York City Dep't of Investigation v. Passannante*, 544 N.Y.S.2d 1, 2 (N.Y. App. Div. 1989). Similarly, HUD's Office of the Inspector General and the Comptroller General may conduct audits and investigations and issue administrative subpoenas. 5 U.S.C. §§ 401, 402, 406(4); 31 U.S.C. § 716(c)(1) ("[T]he Comptroller General may subpena [sic] a record of a person not in the United States Government when the record is not made available . . . to which the Comptroller General has access by law or by agreement . . . .").

Third, even if the PHA chose not to use any procedure outside those provided by the HAP contract itself, the owner is nonetheless afforded an opportunity to have a neutral decisionmaker review the reasonableness of a search demand before facing any penalties for failing to comply. Paragraph 11 of the HAP contract does provide that the agencies will have full and free access to the contract unit, the premises, and the owner's accounts and records, but this term must be viewed in light of the preceding paragraph, which states that "the owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require." *See* ECF No. 21, Ex. A, part B, para. 11(a). An owner faces no statutory or regulatory penalties for failing to comply with this term. At most, an owner's failure to comply with the obligations imposed by paragraph 11 is a breach of the HAP contract. *See id.* para. 10(a)(1). In

---

[19] If the search is part of a criminal investigation, then the Criminal Procedure Law applies. *See* N.Y. Crim. Proc. §§ 690.05-.55.

the event of a breach, the PHA must notify the owner of its determination that the breach has occurred, including a brief statement of its reasoning. *Id.* para. 10(b). The PHA's "rights and remedies" in the event of the owner's breach of the HAP contract include the suspension, abatement, or termination of housing assistance payments or the termination of the HAP contract. *Id.* para. 10(c). Additionally, the PHA may seek additional relief by judicial action, such as specific performance or other injunctive relief. *Id.* para. 10(d).

The worst-case scenario if the owner refuses to permit a search or respond to a request for information is that the PHA gives the owner notice that it has determined that a breach of the HAP contract has occurred and informs the owner that it will stop making payments and/or terminate the HAP contract.[20] This means that the HAP contract provides for precompliance review before the owner experiences any consequence for its breach. The PHA may file a lawsuit seeking specific performance or other injunctive relief. *Id.* Or, after obtaining the PHA's written determination, the owner may file a lawsuit seeking a declaratory judgment that no breach occurred because the demand for information or request to perform a search was not reasonable. The posture of the former would be analogous to a motion to enforce an administrative subpoena, while the posture of the latter would be analogous to a motion to quash an administrative subpoena. In either case, the owner would obtain judicial review of the

---

[20] This consequence is a far cry from the automatic "penalties" of arrest, criminal prosecution, and fines identified in *Patel*, *See v. Seattle*, and other cases. *See, e.g.*, *Patel*, 576 U.S. at 421. Any negative consequence due to alleged noncompliance with the HAP contract occurs within a contractual framework, where the owner may equally claim that the PHA's failure to make payments based on an unlawful or unreasonable demand breaches the contract. The suspension or termination of payments under these circumstances would not infringe upon the owner's Fourth Amendment rights. *Cf. Wyman v. James*, 400 U.S. 309, 324-25 (1971) ("So here Mrs. James has the "right" to refuse the home visit, but a consequence in the form of cessation of aid . . . flows from that refusal. The choice is entirely hers, and nothing of constitutional magnitude is involved.").

reasonableness of the PHA's demand, which would be guided by the legal standards discussed above.

For all of these reasons, the NYCHRL's requirement that an owner sign a HAP contract does not violate the Fourth Amendment.

3. *The NYCHRL's prohibition on source of income discrimination is not preempted by federal law.*

Courts have universally rejected the Trust's argument that the NYCHRL's prohibition on source of income discrimination is preempted by federal law. *See, e.g.*, *People v. Ivybrooke Equity Enters., LLC*, 107 N.Y.S.3d 248, 251 (N.Y. App. Div. 2019); *Tapia*, 915 N.Y.S.2d at 22; *Kosoglyadov v. 3130 Brighton Seventh, LLC*, 863 N.Y.S.2d 777, 779 (N.Y. App. Div. 2008); *see also Austin Apt. Ass'n*, 89 F. Supp. 3d at 895 (The "argument has been rejected by every court which has confronted it."). A federal regulation establishes that state and local laws that prohibit discrimination against Section 8 voucher holders, like the NYCHRL, are not preempted. 24 C.F.R. § 982.53(d).

Despite this overwhelming authority, the Trust argues that conflict preemption bars enforcement of the NYCHRL because federal regulations categorically exclude certain units[21] and owners from the program and because Congress intended the program to be voluntary. ECF No. 21 paras. 80-81. Both of these arguments are meritless.

There are two branches of conflict preemption: "impossibility" and "obstacle." *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 152 (1982); *Figueroa v. Forster*, 864 F.3d 222, 234-35 (2d Cir. 2017). "Impossibility occurs when state law penalizes what federal law requires, or when state law claims directly conflict with federal law." *Figueroa*, 864 F.3d at 234 (citation

---

[21] The Trust is wrong about some of the unit exclusions it cites; for example, there are separate regulations regarding the use of Section 8 vouchers in special housing types such as Single Room Occupancy (SRO) units, which have different HQS. *See* 24 C.F.R. §§ 982.601-.618.

and internal quotation marks omitted). The obstacle branch "precludes state law that poses an actual conflict with the overriding federal purpose and objective." *Id.* at 234-35. The NYCHRL poses no conflict under either branch.

To meet its burden regarding impossibility conflict preemption, the Trust needs to show that it could not comply with federal law if it also complied with the NYCHRL. *Id.* at 234. In support of this claim, it cites various Section 8 regulations. But its citations miss the point. The NYCHRL prohibits discrimination against people because of their status as Section 8 voucher holders, including the refusal to comply with program requirements. *Cadet-Legros v. New York Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, 226, 228 n.5 (N.Y. App. Div. 2015); *Rakhman*, 916 N.Y.S.2d at 582. It is not impossible to comply with the NYCHRL and the Section 8 regulations. If an owner or unit is categorically ineligible for the Section 8 program, with respect to that owner or unit, there would be no discriminatory intent. In such a case, the owner would not be refusing to rent to a Section 8 voucher holder; rather, the PHA would be unable to approve the rental because of an independent legal requirement that the PHA must follow.

For obstacle conflict preemption, the Trust needs to demonstrate that "the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." *Figueroa*, 864 F.3d at 235. The HUD regulation providing that the NYCHRL and similar laws are not preempted should be dispositive on this point. *See* 24 C.F.R. § 982.53(d). Moreover, there is no support in the legislative history for the claim that Congress made the "voluntary" nature of the Section 8 program its "overriding purpose," *see Figueroa*, 864 F.3d at 234-35, or sought to prohibit state and local governments from requiring the acceptance of Section 8 vouchers, *see Austin Apt. Ass'n*, 89 F. Supp.3d at 885-86. Indeed, the Section 8

program consciously operates against the backdrop of state and local landlord-tenant law. *See Rosario v. Diagonal Realty LLC,* 872 N.E.2d 860, 864 (N.Y. 2007).

Therefore, the Court should also dismiss the Trust's preemption claims.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Safe Horizon's motion to dismiss the Trust's complaint.

Dated: April 15, 2024
New York, NY

Respectfully submitted,

By:     __/s/ Evan Henley_____
         Evan Henley
         THE LEGAL AID SOCIETY
         49 Thomas Street, Floor 5
         New York, NY 10013
         Tel.: 212-298-5233
         ewhenley@legal-aid.org