UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

216 EAST 29TH STREET TRUST,

               Plaintiff,

       – *against* –

CITY OF NEW YORK,

               Defendant,

SAFE HORIZON, INC.,

               Intervenor
               Defendant.

**OPINION & ORDER**

24-cv-00595 (ER)

RAMOS, D.J.:

       216 East 29th Street Trust (the "Trust") brought this action against the City of New York (the "City"), alleging that New York City Administrative Code § 8-107 is unconstitutional under the Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York State Constitution and preempted by federal law. Doc. 30 ¶¶ 75–89. Safe Horizon, Inc. ("Safe Horizon"), a non-profit organization, filed a motion to intervene on April 15, 2024, and the Court granted the motion on June 5, 2024. Docs. 27, 36. Before the Court are the City and Safe Horizon's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the Trust's cross-motion for summary judgment. Docs. 27-3, 28, 33-8. For the reasons stated below, the motions to dismiss are GRANTED and the cross-motion for summary judgment is DENIED as moot.

I.    **BACKGROUND**

A.  **Factual Background[1]**

1.  *Parties*

The Trust owns a 48-unit residential apartment building located at 216 East 29th Street, New York, NY 10016 (the "Building") and is managed by its trustee, Marcus Sakow.  Doc. 30 ¶ 1; Doc. 37-1 at 2 ¶ 4.  The beneficiary of the Trust is Marcus Sakow's sister, Shana Sakow.  Doc. 37-1 at 2 ¶ 2.  Motley Management, LLC, which does business as Homefront Management, manages the Trust's day-to-day operations.[2]  *Id.* at 2–3 ¶ 5.

The City is a municipal corporation.  Doc. 30 ¶ 2.  Safe Horizon is "a non-profit organization that serves [under-resourced] and vulnerable New Yorkers."  Doc. 22.  Its Streetwork Project—which "serves homeless, unsheltered, and unstably housed youth by offering a variety of services"—has several hundred clients who have been issued emergency housing vouchers.  *Id.*

2.  *The Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York State Constitution*

The Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York State Constitution state:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; N.Y. Const. art. I § 12.

---

[1] The following facts are drawn from the complaint, the parties' Rule 56.1 statements, Docs. 33-7, 37-1, 38-1, supporting exhibits, and pleadings.  Only undisputed facts from the parties' Rule 56.1 statements are included.  On a Rule 12(b)(1) motion, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (citation omitted); *see also Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  Both the City and Safe Horizon move pursuant to Rule 12(b)(1) and Rule 12(b)(6).  *See* Docs. 27-3, 28.

[2] The City and Safe Horizon note that there is no entity registered with the New York Department of State under the name Motley Management, LLC.  *See* Doc. 37-1 at 2–3 ¶ 5; Doc. 38-1 at 3 ¶ 5.

     *3.  Title 8 of the Administrative Code of the City of New York*

     Title 8 of the Administrative Code of the City of New York prohibits various forms of discrimination in the rental housing market, including discrimination because of "any lawful source of income."[3]  NYC Admin. Code § 8.

     NYC Administrative Code § 8-107 states, in relevant part:

> It shall be an unlawful discriminatory practice for the owner . . . or managing agent . . . of a housing accommodation . . . or any agent or employee thereof:  (1) . . . *because of any lawful source of income of such person or persons* . . . (a) [t]o refuse to … rent, lease, approve the … rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation . . . (b) [t]o discriminate against any such person or persons in the terms, conditions or privileges of the … rental or lease of any such housing accommodation . . .; or (c) [t]o represent to such person or persons that any housing accommodation or an interest therein is not available for … rental or lease when in fact it is available to such person.

*Id.* § 8-107 (emphasis added).

     NYC Administrative Code § 8-102 defines "lawful source of income" to mean, among other things, "any form of federal, state, or local public assistance or housing assistance including, but not limited to, [S]ection 8 vouchers, whether or not such income or credit is paid or attributed directly to a landlord."  *Id.* § 8-102.

     The New York City Commission on Human Rights (the "Commission") "is charged with the enforcement of … Title 8 of the Administrative Code of the City of New York."[4]  NYC Administrative Code § 8-120 provides that, in relevant part:

> If … the [C]ommission shall find that a respondent has engaged in any unlawful discriminatory practice or any act of discriminatory harassment …, the [C]ommission shall state its findings of fact and conclusions of law and shall issue and cause to be served on … any necessary party … an order requiring such respondent to cease and desist from such unlawful discriminatory practice or acts of discriminatory harassment or violence.  Such order shall require the

---

[3] *See Text of the NYC Human Rights Law*, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/law/text-of-the-law.page (last visited January 28, 2025).

[4] *Inside the NYC Commission on Human Rights*, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/about/inside-cchr.page (last visited January 28, 2025).

> respondent to take such affirmative action as, in the judgment of the
> [C]ommission, will effectuate the purposes of this chapter … as
> applicable, including … renting or leasing, or approving the …
> rental or lease of housing accommodations, land or commercial
> space … without unlawful discrimination[.]

*Id.* § 8-120.

NYC Administrative Code § 8-126 authorizes civil penalties imposed by the

Commission for unlawful discriminatory practices or acts of discriminatory harassment

or violence.  *Id.* § 8-126.  NYC Administrative Code §§ 8-124 and 8-129 authorize civil

and criminal penalties, respectively, for violations of the Commission's orders.  *Id.* §§ 8-

124, 8-129.

   *4. The Section 8 Program Generally*

   In 1974, Congress enacted the Housing Choice Voucher Program (the "HCV

program").  *See* 42 U.S.C. § 1437f.  In 2021, Congress created the Emergency Housing

Voucher Program.  Doc. 30 ¶ 10.  These two federal programs are jointly referred to as

the Section 8 program.  *Id.* ¶¶ 7, 11.

   The Section 8 program is governed by regulations provided by the U.S.

Department of Housing and Urban Development (the "HUD").  24 C.F.R. § 982.53(d).

Through the HCV program, the HUD "pays rental subsidies[,] so eligible families can

afford decent, safe, and sanitary housing."  *Id.* § 982.1(a)(1).

   Public housing agencies (the "PHAs") are state or local governmental entities that

generally administer the HCV program.  *Id.*  The New York City Housing Authority

("NYCHA") is a local PHA operating in New York City.  Doc 37-1 at 17 ¶ 55.

   A housing unit's—or apartment's—eligibility to participate in the Section 8

program is based on meeting (1) minimum quality standards developed by the HUD

known as the housing quality standards (the "HQS") and (2) price requirements.  Doc. 30

¶ 23.  The HQS include aspects such as sanitary facilities, food preparation, refuse

disposal, space, security, thermal environment, illumination, electricity, structure,

materials, interior air quality, water supply, lead-based paint, access, site, neighborhood, and smoke detectors.  24 C.F.R.  § 982.401(a)(2)(ii).

The price requirements require that the rent being charged is "reasonable" for a specific unit.  *Id.* §§ 982.1(a)(2), 982.353(e), & 982.507(a)(1).  Rent is considered reasonable if it "is not more than rent charged:  (1) [f]or comparable units in the private unassisted market and (2) [f]or comparable unassisted units in the premises." *Id.* § 982.4(b).  If the local PHA determines the specific unit complies with the HQS and that the rent being charged is "reasonable," then the PHA will allow a landlord and tenant to participate in the Section 8 program with respect to that unit.  *Id.* §§ 982.1(a)(2), 982.353(e), & 982.507(a)(1).

   *5.  The Housing Assistance Payment Contract[5]*

For any qualifying housing unit that uses subsidies from the Section 8 program, the local PHA enters into a Housing Assistance Payment ("HAP") contract with the landlord to make payments on behalf of the tenant.  *Id.* § 982.1(a)(2).

The HAP contract specifically provides that the landlord agrees that "[t]he PHA may inspect the unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS."  Doc. 37-3 at 5.  Section 11 of the HAP contract, titled "PHA and HUD Access to Premises and Owner's Records," states:

> [(a)] The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.  [(b)] The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.  [(c)] The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

---

[5] The Trust filed a prior version of the Housing Assistance Payment contract as an exhibit to the amended complaint.  *See* Doc 30-1.  Safe Horizon filed the current version of the contract as an exhibit to its memorandum of law in further support of its motion to dismiss and in opposition to the Trust's motion for summary judgment.  *See* Doc 37-3.

*Id.* at 8.

Section 6 of the HAP contract, titled "Rent to Owner:  Reasonable Rent," states:

> During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises.  The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

*Id.* at 6.

6.  *Prospective Tenant for the Building and Filing of an Administrative Complaint with the New York City Office of Administrative Trials and Hearings*

On July 26, 2023, a prospective tenant named Dmitri Derodel contacted Homefront Management, the Trust's property manager, to inquire about renting an apartment in the Building.  Doc. 37-1 at 5 ¶ 13.  On that same day, Derodel also informed Homefront Management that he had an Emergency Housing Voucher ("EHV"), offered through the Section 8 program, and wanted to use it towards his rent.  Doc. 30 ¶ 64.  The Trust had never had a tenant with a voucher through the Section 8 program and had never executed a HAP contract.  *Id.* ¶ 72.  Because Homefront Management had never been asked about its acceptance of EHVs before, and because its employees were unfamiliar with NYC Administrative Code § 8-107 requiring acceptance of Section 8 program vouchers, Derodel was initially told that the Trust did not accept vouchers.  *Id.* ¶ 65; Doc. 37-1 at 5 ¶ 15.

Derodel contacted the Commission to complain about the Trust's refusal to rent to him based on his status as an EHV holder.  Doc. 30 ¶ 66.  The Commission contacted Homefront Management and explained that refusing to rent to Derodel because he had a voucher was housing discrimination.  Doc. 37-1 at 6 ¶ 17.  Homefront Management agreed to proceed with Derodel's rental application and executed required documents issued by NYCHA.  Doc. 30 ¶ 67.

Since Homefront Management does not own the Building, the Commission then asked Marcus Sakow to execute the necessary NYCHA documents on behalf of the Trust. *Id.* ¶¶ 68–69.  At that point, Marcus Sakow determined that the Trust would not participate in the Section 8 program, and declined to execute NYCHA documents.  *Id.* ¶ 71; Doc. 37-1 at 6–7 ¶ 21.  In addition, Marcus Sakow explained that the Trust will not enter into a HAP contract.  Doc. 37-1 at 3 ¶ 9.

When the Trust decided that it did not wish to participate in the Section 8 program, the Commission assisted Derodel in drafting and filing a complaint alleging housing discrimination against the Trust, Marcus Sakow, Shana Sakow, Motley Management employee Debu Lamae, and two other entities.  Doc. 37-1 at 7 ¶ 22.  On February 5, 2024, Derodel filed the administrative complaint with the New York City Office of Administrative Trials and Hearings ("OATH").  Doc. 28-2 ¶ 2.  On February 14, 2024, the Commission served the complaint on the respondents.  *Id.* ¶ 5.  The statutory deadline to submit a verified answer was March 15, 2024, and as of April 15, 2024, the respondents had not submitted an answer or requested an extension of their time to answer the administrative complaint.  *Id.* ¶ 6.  The Commission has not yet determined probable cause based on the administrative complaint.  Doc. 37-1 at 7 ¶ 23.  The complaint also has not been withdrawn.  *Id.*

**B.  Procedural History**

On January 26, 2024, the Trust filed a complaint against the City and the Commission, seeking (1) a declaratory judgment that NYC Administrative Code § 8-107 is unconstitutional under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and preempted by federal law, (2) a permanent injunction preventing the Commission from pursuing a complaint against the Trust for failing to participate in the Section 8 program, and (3) attorneys' fees pursuant to 42 U.S.C. § 1988(b).  Doc. 1. Concurrently with the filing of the complaint, the Trust filed a motion for preliminary injunction and temporary restraining order.  Doc. 2.  On January 29 and February 13,

2024, respectively, the Court declined to grant a temporary restraining order and denied the Trust's motion for preliminary injunction. Docs. 6, 19. The Court denied the motion for preliminary injunction because the *Younger* abstention doctrine bars federal courts from interfering with the Commission's "administrative investigations and potential enforcement actions." Doc. 19 at 33. The Court also held that the Trust had not shown a likelihood of success on the merits because, among other things, its constitutional claims were unripe. *Id.* at 34.

On March 13, 2024, the Trust filed the instant amended complaint, removing the Commission as a defendant and amending its claims. Doc. 30; *see also* Doc. 21. The Trust now seeks (1) a declaratory judgment that § 8-107 is unconstitutional under the Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York State Constitution and preempted by federal law, (2) a permanent injunction precluding the City from enforcing § 8-107 with respect to landlords who do not wish to participate in housing voucher programs, and (3) attorneys' fees pursuant to 42 U.S.C. § 1988(b). Doc. 30. The Trust specifically alleges that the City is "coercing landlords to waive their rights" under the Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York State Constitution to be free from warrantless search and seizure by "making participation in [the] Section 8 [program] compulsory, and with it requiring landlords to comply with warrantless government searches under risk of penalty." *Id.* ¶ 46.

On April 15, 2024, the City filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Doc. 28. Also on April 15, 2024, Safe Horizon filed a motion to intervene with an attached proposed motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and on June 5, 2024, the Court granted Safe Horizon's motion to intervene. Doc. 27; Doc. 27-3; Doc. 36. On May 15, 2024, the Trust filed a cross-motion for summary judgment seeking declaratory judgment that the enforcement of §§ 8-102 and 8-107 "violate[] the Fourth and

Fourteenth Amendment [and is preempted by federal law] to the extent it compels landlords to participate in [the] Section 8 [program]."  Doc. 33.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a court must dismiss an action for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (*citing* Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 at 113).  When determining if a federal court has subject matter jurisdiction and standing is challenged on the basis of the pleadings, the Court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [the plaintiff]."  *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation omitted).  However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring this action.  *See Selevan v. New York Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009).  The Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion.  *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citation omitted).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (citation omitted); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

**B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard.  *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted).  And "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by

10

reference in the complaint." *Doe v. New York University*, No. 20-cv-1343 (GHW), 2021
WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*,
622 F.3d 104, 111 (2d Cir. 2010)).

### C. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no
genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is
'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-
moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467
(S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d
Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the
governing law. *Senno*, 812 F. Supp. 2d at 454 (citing *SCR Joint Venture*, 559 F.3d at
137). The party moving for summary judgment is first responsible for demonstrating the
absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,
323 (1986). If the moving party meets its burden, "the nonmoving party must come
forward with admissible evidence sufficient to raise a genuine issue of fact for trial in
order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp.
2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145
(2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in
the light most favorable to the non-moving party and must resolve all ambiguities and
draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156,
164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d
Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving
party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March
of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion
for summary judgment, "the non-moving party must set forth significant, probative
evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F.

Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

## III.    DISCUSSION

The City and Safe Horizon both move to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  *See* Doc. 27-3; Doc. 28.  When a party moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction."  *Chambers v. Wright*, No. 05-cv-9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted); *see also Baldessarre v. Monroe-Woodbury Center School District*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012).  Accordingly, the Court will first address whether it has subject matter jurisdiction.

   1.  *Lack of Subject Matter Jurisdiction*

   a.  *The Younger Abstention Doctrine Applies*[6]

Although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given to them," the *Younger* abstention doctrine provides a narrow exception to that general rule.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976); *see Younger v. Harris*, 401 U.S. 37, 53–54 (1971).  Under the doctrine, "district courts should abstain from exercising jurisdiction ... in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Falco v. Justices of the Matrimonial Parts of the Supreme Court of Suffolk County*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Communications, Inc. v.*

---

[6] Safe Horizon addresses whether the *Younger* abstention doctrine should apply in a supplemental memorandum of law in further support of its motion to dismiss.  *See* Doc. 48.

*Jacobs*, 571 U.S. 69, 78 (2013)).  Abstention is required where (1) there is an ongoing civil enforcement proceeding, (2) an important state interest is involved, and (3) the target of the enforcement proceeding has an adequate opportunity for judicial review of its constitutional claims during or after the proceeding.  *See Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987); *see also Sprint Communications, Inc.*, 571 U.S. at 72, 81–82.  The *Younger* abstention doctrine applies only to claims for declaratory and injunctive relief.  *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000); *see also Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018) (applying *Kirschner*).  In addition, a motion to dismiss based on an abstention doctrine, like the *Younger* abstention doctrine, is "properly construed as a motion to dismiss … pursuant to Rule 12(b)(1)."  *Artists Rights Enforcement Corp. v. Estate of Robinson*, No. 15-cv-9878 (ER), 2017 WL 933106, at *4 (S.D.N.Y. Mar. 8, 2017).

The City argues that the *Younger* abstention doctrine applies here because the pending OATH administrative proceedings against the Trust satisfy the elements of the *Younger* abstention doctrine.  Doc. 28-1 at 15.  Specifically, the proceedings are (1) ongoing civil enforcement proceedings, (2) implicate important state interests in combatting housing discrimination, and (3) provide an adequate opportunity for review of legal challenges to the City's anti-discrimination laws—including judicial review thereof under Article 78 of the New York Civil Practice Law and Rules.  *Id.* (citing *University Club v. City of New York*, 842 F.2d 37, 38 (2d Cir. 1988)).  The City further argues that the as-applied Fourth Amendment and preemption challenges—which are the challenges the Trust raises here—have previously been adjudicated in OATH administrative proceedings.  *See* Doc. 28-1 at 15 n.7.

The Trust, on the other hand, argues that it has made a facial challenge, not an as-applied challenge, to § 8-107, and that the *Younger* abstention doctrine does not apply to facial challenges.  Doc. 33 at 27–29.  The Trust elaborates that since neither the OATH nor state courts hearing an Article 78 review of an OATH decision can invalidate § 8-107

on its face, the *Younger* abstention doctrine does not apply to the Trust's facial challenge. *Id.* at 29.

Thus, the crux as to whether the *Younger* abstention doctrine applies here depends on whether the Trust's Fourth Amendment challenge[7] is facial or as-applied. The Court finds that the Trust brings an as-applied challenge because it rests on specific facts extrinsic to the text of § 8-107. A facial challenge to a law only considers the text of the law itself, not its particular circumstances. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006) (citing *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 n.11 (1988)). An as-applied challenge to the law "requires an analysis of the facts of a particular case to determine whether the application of a [law], even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC*, 463 F.3d at 174.

Here, the challenged law makes it an "unlawful discriminatory practice" for a building owner to refuse to rent an apartment to a prospective tenant on the basis of, among other things, "any lawful source of income." The law on its face does not implicate the Fourth Amendment because it does not require or even say anything about a search or seizure. The challenge specifically depends on a landlord and the local PHA entering into a HAP contract and the subsequent alleged "coerced search" that arises from the specifics of that HAP contract—whose terms are dictated by federal, not local, regulations and are subject to change. A law cannot be facially invalidated based on the particulars of a contract drafted by a non-party, or based on particular facts about the plaintiff. *See, e.g.*, *Geller v. Cuomo*, 476 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) (the Court "considers only the text of the [provision] itself, not its application to the particular circumstances of an individual" on a facial challenge) (citation omitted).

---

[7] Since the Fourth Amendment of the U.S. Constitution and Article 1, Section 12 of the New York Constitution are the same, the Court will analyze the challenge together and refer to the challenge as just the Trust's Fourth Amendment challenge.

In addition, the Trust's Fourth Amendment challenge is not a facial challenge because it does not plausibly allege that the City's law is unconstitutional in all "applications of [the law] in which it actually authorizes or prohibits conduct." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Accordingly, because the Trust's as-applied Fourth Amendment challenge can be adjudicated in the pending OATH proceeding, the *Younger* abstention doctrine bars this Court's adjudication of the Trust's challenge. *See, e.g.*, *Commission Human Rights ex rel. Watson v. PPC Residential*, OATH Index Nos. 2245/19, 2246/19, Memorandum Decision (Sept. 11, 2023), https://archive.citylaw.org/wp-content/uploads/sites/17/oath/19_cases/19-2245md.pdf (adjudicating a Fourth Amendment challenge to NYC Administrative Code § 8-107).

The Trust subsequently filed a supplemental memorandum of law explaining that the *Younger* abstention doctrine is no longer appropriate where an administrative hearing will not be tried before a jury because of the Supreme Court's recent decision in *SEC v. Jarkesy*, 603 U.S. 109 (June 27, 2024). Doc. 47 at 4–5. The Trust specifically argues that "the Supreme Court decided that federal administrative agencies' prosecution of defendants seeking civil penalties must be tried before a jury pursuant to the Seventh Amendment [of the U.S. Constitution]." *Id.* at 5. Safe Horizon responded that "the Seventh Amendment only applies at the federal level and is inapplicable to … [the Commission] proceeding against [the Trust]." Doc. 48 at 4. The City also responded arguing, similarly to Safe Horizon, that *Jarkesy* is about "the right to a jury in *federal* civil proceedings for monetary relief" and that "such federal decisions have no bearing on any jury right in New York state civil proceedings." Doc. 49 at 3. Here, *Jarkesy* does not apply because OATH proceedings are not federal proceedings. And even if *Jarkesy* were to apply, the *Younger* abstention doctrine still applies because the Trust can invoke the right to a jury trial before the Commission and in a subsequent Article 78 proceeding. *See University Club*, 842 F.2d at 40–41.

Additionally, the *Younger* abstention doctrine also bars this Court from adjudicating the Trust's preemption challenge because the pending OATH proceeding can also review the Trust's preemption challenge. *See* Doc. 38 at 6–7; *see e.g.*, *Commission on Human Rights ex rel. Shmushkina v. New Brooklyn Realty*, OATH Index Nos. 2541/08, 2542/08, 2543/08, Memorandum Decision (Jan. 2, 2009), https://archive.citylaw.org/wp-content/uploads/sites/17/oath/08_Cases/08-2541md.pdf. In fact, the OATH has adjudicated the same federal preemption challenge to § 8-107 raised by the Trust. *See Shmushkina*, OATH Index Nos. 2541/08, 2542/08, 2543/08.

     b.  *The Trust's Fourth Amendment Claim is Unripe*[8]

The first requirement of constitutional standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). In other words, the constitutional claim must be "ripe" for adjudication. "Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). "[T]o say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *National Organization for Marriage*, 714 F.3d at 688 (quoting *Lujan*, 504 U.S. at 560). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted). The ripeness requirement prevents courts "from entangling themselves in abstract disagreements" by adjudicating disputes too early. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985).

---

[8] Safe Horizon only briefly addresses whether the Trust's Fourth Amendment claim is unripe in a footnote. *See* Doc. 27-3 at 14.

The City argues that the Trust's as-applied Fourth Amendment claim is unripe because it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Doc. 28-1 at 20 (citing *Texas*, 523 U.S. at 300).  The City elaborates that the hypothetical harm of a warrantless search is unripe for review because it is based on many contingent steps that must occur before a landlord faces any consequences for resisting a warrantless search.  Doc. 28-1 at 19–20 (citing *PPC Residential*, OATH Index Nos. 2245/19, 2246/19, at 7).

Here, the Trust's as-applied Fourth Amendment challenge is clearly unripe because the claim "rests upon contingent future events that may not occur." *Texas*, 523 U.S. at 300 (internal quotation marks and citations omitted).  As explained in a recent decision by OATH, the following steps would be needed "before a landlord who refuses to rent to [a holder of a] Section 8 [voucher] faces any consequences for declining a warrantless search":

> First, [the landlord] would have to approve a voucher holder for an apartment.  Next, a government agency that administers the particular voucher program would have to request consent to inspect and [the landlord] would have to deny consent.  [The landlord] assumes that [the Commission] would seek to impose a penalty for denying consent rather than wait for the appropriate agency to obtain a warrant, authorized by Supreme Court and Court of Appeals precedent, to conduct an inspection.  [The landlord] assumes further that after conducting an investigation, [the Commission] would find probable cause that a violation occurred, initiate a proceeding at this tribunal, and impose a penalty after giving [the landlord] notice and an opportunity to respond.

*PPC Residential*, OATH Index Nos. 2245/19, 2246/19, at 7.  Accordingly, it would be premature for the Court to assess the Trust's hypothetical as-applied Fourth Amendment claim without knowing, among other things, the scope of the search requested by the government agency.[9]

---

[9] When the Court rejected the Trust's request for preliminary injunction, it based its determination, in part, on the fact that the Trust's claims "are not yet ripe….[and] still hypothetical"  *See* Doc. 19 at 34.

   c. *The Trust Also Does Not Have Standing to Bring its Fourth Amendment Claim*[10]

To establish standing under Article III of the U.S. Constitution, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *see also Weekes v. Outdoor Gear Exchange, Inc.*, No. 22-cv-1283 (ER), 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023).  At the motion to dismiss stage, the plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest" they have standing.  *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).  Article III confines the judicial power of the federal courts to cases where the plaintiff shows, *inter alia*, that she suffered a concrete injury in fact.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (citing *Lujan*, 504 U.S. at 560–61 (1992)).  A plaintiff cannot rely on the fact that the defendant committed a statutory violation:  an "injury in law" does not amount to an "injury in fact" for purposes of Article III standing.  *TransUnion LLC*, 594 U.S. at 426.  Rather, a "concrete" harm is something with at least a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms."  *Id.* at 417 (citing *Spokeo*, 578 U.S. at 340–41).  "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  *Harty v. Simon Property Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (citations omitted).  "[T]hreatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient."  *Clapper v. Amnesty International*, 568 U.S. 398, 409 (2013) (emphasis in original) (internal quotation marks and citation omitted).  To have standing to bring a Fourth Amendment claim in the inspection context, a "plaintiff needs to present allegations or evidence that the

_____

[10] Because the Court has already determined that the Trust's Fourth Amendment challenge is an as-applied challenge, the Court will not address the Trust's standing to bring a facial Fourth Amendment challenge.

government has actually conducted a warrantless search of plaintiff's property pursuant to the inspection ordinance or has imminent plans to do so." *Wirth v. City of Rochester*, No. 17-cv-6347 (FPG), 2020 WL 5814417, at \*4 (W.D.N.Y. Sept. 30, 2020) (holding that the plaintiff does not have standing in part because "there is no evidence in the record that [the] [d]efendants actually searched the [relevant] [p]roperty without a warrant or without consent"); *see Flynn v. City of Lincoln Park*, No. 2:18-cv-12187 (TGB), 2020 WL 344854, at \*7 (E.D. Mich. Jan. 21, 2020) (holding that the plaintiffs "lack the requisite injury for Article III standing" because "there is no evidence that any representative of [the City] of Lincoln Park searched any property belonging to the [plaintiffs]—or to any other City [of Lincoln Park] resident—without their consent or a warrant"); *see also Patel*, 576 U.S. at 413–14 (stating that Los Angeles "stipulated that [the hotel owners] have been subjected to mandatory record inspections under the ordinance without consent or warrant").

Safe Horizon argues that the Trust fails to establish standing because it has not alleged facts of a certain impending injury and that the Trust's allegations simply "boil down to its speculative fear that a government agency will act unconstitutionally in the future." Doc. 27-3 at 14. Safe Horizon further argues that "[t]he Trust does not [even] allege that an owner has ever 'acquiesced to a warrantless search due to the threat of a penalty' or that a PHA 'has ever conducted an inspection without obtaining a warrant where consent was not given.'" *Id.* (quoting *Wirth*, 2020 WL 5814417, at \*5). Similarly, the City argues that the Trust does not have standing because it "has not been subjected to any warrantless searches" and "[s]uch a hypothetical future injury is insufficient to confer standing." Doc. 28-1 at 19 (citing *Lujan*, 504 U.S. at 560–561). The Trust counters that it has standing to bring an as-applied Fourth Amendment challenge because (1) "[t]he Trust has suffered the concrete and particularized injury of coercion," (2) "[t]he harm was caused by the actions of the City in enacting an unconstitutional law," and (3) "the harm can be remedied by the requested relief of declaratory judgment striking the law down as

unconstitutional." Doc. 33 at 33–34. The Trust further argues that "the government will perform a warrantless search if and when the Trust is compelled by OATH to participate in [the] Section 8 [program], it chooses to avoid criminal penalties for failing to comply with that order…, and it signs a HAP contract under coercion, at which point inspections will take place without warrants." *Id.* at 34.

Here, the Court determines that the Trust has not alleged an injury in fact. As previously discussed, multiple events would be needed before the Trust could be penalized for resisting an inspection. *See PPC Residential*, OATH Index Nos. 2245/19, 2246/19, at 7. Here, there is no actual imminent injury without an actual or imminent inspection, and there is no concrete and particularized injury without a warrantless inspection. Although the Trust claims that after signing the HAP contract, "inspections will take place without warrants," the Trust does not allege or provide evidence of even one instance where this has happened. Doc. 33 at 34. The Trust's conjectural fear that a warrantless inspection will take place in the future does not confer standing. *Clapper*, 568 U.S. at 409 (2013); *National Organization for Marriage*, 714 F.3d at 688. Accordingly, the Trust has failed to establish standing to pursue its as-applied Fourth Amendment challenge because it has not alleged an actual or imminent concrete and particularized injury. *Lujan*, 504 U.S. at 560 (1992).

### 2. Failure to State a Claim

The Court will not address whether the Trust has failed to state a claim because the Court has determined that the Court lacks subject matter jurisdiction over the Trust's claims.

## IV.    CONCLUSION

For the reasons set forth above, the City and Safe Horizon's motions to dismiss are GRANTED and the Trust's cross-motion for summary judgment is DENIED as moot. The Clerk of Court is respectfully directed to terminate the motion, Doc. 28.

It is SO ORDERED.

Dated:    January 28, 2025
          New York, New York

_____
                  EDGARDO RAMOS, U.S.D.J.